**Samuel B. HILL, Appellant,**

v.

**The STATE of Texas.**

**No. 1385–01.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 6, 2002.

Scott Brown, Fort Worth, for Appellant.

Debra Ann Windsor, Assistant District Attorney, Fort Worth, Matthew Paul, State's Attorney, Austin, for State.

## *OPINION*

KEASLER, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, and HERVEY joined.

The trial judge declared a mistrial for reasons undisclosed on the record. Under

the applicable statutes, there is no conceivable reason he could have had that would have risen to the level of "manifest necessity." The State asks us to order an abatement to discover the judge's reasons for his ruling. We decline to do so since it would be a futile act.

## I. Facts and Procedural History

Samuel Hill was charged with capital murder. Voir dire began on a Tuesday morning and concluded the following morning. The jury was sworn in at noon on Wednesday and told to return the next day for the trial to begin. On Wednesday afternoon, one of the jurors called the court "hysterical," saying "she couldn't continue." The following morning, the juror presented the court with two notes, one from her doctor and one from herself. In her note, she informed the court that health problems would prevent her from performing her duties as a juror. She explained that she suffered from "debilitating panic attacks when placed under stressful situations" and should not "participate in jury decision-making due to the emotional stress." The note from her physician stated that she suffered from "generalized anxiety disorder and possible panic disorder with stressful situations."

At a brief hearing, the defense admitted into evidence the two notes, plus the juror's blood pressure card and jury questionnaire. Defense counsel argued that the juror had not informed the court of any problem during the two days of jury selection. Then the judge stated the following: "All right. There's been lengthy discussions in chambers about this. The Court, having weighed all the options, is now going to, on Court's own motion, declare a mistrial." The State and Hill both objected, and the judge overruled the objections. The defense requested that another panel be summoned immediately,

and the judge said they would get another panel the following morning.

That morning, a Friday, before viewing the panel, Hill stated that he would be ready to proceed with trial "subject to a motion to dismiss on the grounds of a double jeopardy claim that I anticipate will be filed prior to Monday when we begin jury selection." He reiterated that "if the Court—if the Court will allow me to file that motion on Monday and deem it timely filed, then we can proceed with that portion of it, the jury selection." He further stated:

> Likewise, if you'll allow me to file that motion to dismiss on the double jeopardy claim. As the Court will recall, yesterday over the objection of the State and the defense, the Court declared a mistrial as to what the Court perceived there was a problem with a juror, and as I've done a little research in that matter, it's necessary for me to file a motion to dismiss this case as a result of that. Having only a matter of hours since that mistrial was declared, I have not prepared that motion yet. I will have it ready by Monday.

The trial judge responded that Hill would "be allowed to file it Monday" and it would be "deemed timely filed."

On Monday morning, before beginning voir dire, the court recognized that "the defense has a motion." Hill then stated, "Judge, this morning, we have filed, as I indicated on Friday we would, a Defendant's motion to dismiss based on double jeopardy. We don't need to argue the motion. The motion speaks for itself."

Hill's motion asserted that the jury was selected and sworn on November 10th, and that on November 11th the judge declared a mistrial "Sua Sponte over the objection of both the State and the Defendant. The Defendant alleges that there was no Manifest Necessity that would have allowed the

Court to declare the Mistrial Sua Sponte." The judge denied the motion. Hill asked the judge to enter "findings of fact and conclusions of law with regard to the mistrial that you declared last Thursday," and the judge responded, "Well, all right." No such findings are in the appellate record.

The second voir dire then began, with the second jury being sworn in that afternoon. Trial began the following day. Hill was convicted of capital murder and sentenced to life in prison.

On appeal, Hill argued that the second prosecution violated double jeopardy. The Court of Appeals agreed and reversed the conviction.[1] The court held that the record did not reflect that the judge had considered less drastic alternatives to a mistrial, such as proceeding to trial with eleven jurors.[2] While the State contended that the judge considered and rejected that option during the in-chambers conference, the appellate court found nothing in the record to support that contention.[3]

The Court of Appeals also rejected the State's argument that, in lieu of reversing the conviction, the court should abate the proceedings and permit a hearing in the trial court to supplement the record with evidence of what occurred during the in-chambers conference. The appellate court concluded that it lacked authority to order an abatement because the trial court was not required by law to make findings of fact on the issue.[4]

We granted the State's petition for discretionary review on six grounds. The first four grounds assert that an abatement was permissible and preferable and that we should order one now. The last two grounds contend that Hill failed to meet his burden of proving that the judge failed to consider less drastic alternatives to a mistrial and, therefore, the subsequent prosecution was not barred by double jeopardy. We address the latter two grounds first.

## II. Preservation of Error

Since the dissent contends that Hill's claim fails due to his failure to present supporting evidence at trial, we first address whether he has preserved his double jeopardy claim for our review. The dissent relies on *Anderson v. State*[5] and *Zimmerman v. State*[6] for the proposition that Hill was required to prove his double jeopardy claim by a "preponderance of the evidence."[7] Because he offered no evidence in support of his motion, the dissent argues, Hill's claim "fails as a matter of law."[8]

We disagree. In both of those cases, the defendant presented considerable evidence in support of his double jeopardy claim; there was no issue about whether he had presented enough evidence to justify a review of his claim on appeal. Much more relevant to our case is *State v. Torres*.[9] In *Torres*, the defendant filed a motion arguing that his trial was barred by double jeopardy. The judge ruled on the motion after discussing the events of the

1. *Hill v. State*, No. 02–99–00527–CR (Tex. App.-Fort Worth, opinion delivered May 17, 2001) *(not designated for publication)*.

2. *Id.*, slip op. at 8–9.

3. *Id.*

4. *Id.*, slip op. at 9–10.

5. 635 S.W.2d 722, 725–26 (Tex.Crim.App. 1982).

6. 750 S.W.2d 194, 209 (Tex.Crim.App.1988).

7. *Dissenting opinion,* slip op. at 4.

8. *Id.*

9. 805 S.W.2d 418 (Tex.Crim.App.1991).

previous trial with the prosecutor and defense counsel. On appeal, the State argued that the defendant's double jeopardy claim had to fail because he did not introduce any evidence to support it. We disagreed. We noted that while the defendant did not introduce evidence on the motion, "the State did not object to the format of the hearing or the manner in which the Court made its findings. In fact, the State readily participated in the proceedings." [10] Moreover, we concluded that "[w]here a plea of jeopardy is before the same court and judge," the "requirements concerning the plea are relaxed." [11]

We explained the rationale behind these lax requirements some twenty years before *Torres* in *Shaffer v. State*.[12] There, we said that "[t]he requirement that the defendant present evidence in support of his allegation of former jeopardy serves a legitimate state interest" because "[t]he trial court has no way of knowing that the allegations in the plea are true." [13] But, we added, "the procedural requirements which must be followed are not arid rituals of meaningless form." [14] Instead, "former jeopardy need not be specially pled in those instances where the trial court either knows or should know of the former proceeding, such as in those cases where the former jeopardy arose in the same case." [15] So, we concluded, "the rule does not apply in those circumstances where it is unnecessary, or where its enforcement would serve no purpose." [16]

■ This case, like *Torres*, presents a situation in which requiring a defendant to present evidence in support of his double jeopardy claim would exalt form over substance. Here, the plea was not only before the same court and judge—it was made just a few days after the first trial ended in a mistrial. Requiring Hill to have presented evidence to the trial judge would "serve no .purpose" [17] because here the judge knew of the former proceeding. Indeed, here, he knew of it well, as indicated by his own admission that there had been "lengthy discussions in chambers" about it.

Furthermore, Hill did make clear to the trial judge the substance of his complaint: that the judge declared a mistrial sua sponte over the objections of the parties and that no manifest necessity existed for the mistrial. There was nothing additional which Hill needed to present to the judge to make his claim clear. Appellate Rule 33.1 states that error is preserved for appellate review if the complaint "[i]s made to the trial court by a timely request, objection, or motion that ... state[s] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context." [18] Hill's arguments to the judge as well as his written motion to dismiss satisfied Rule 33.1 because he stated the grounds for his ruling with sufficient specificity for the trial court to be aware of his complaint. Finally, we note that, as in *Torres*, the State did not object to the format of the hearing. Instead, the State readily participated in the proceedings.

10. *Id.* at 421.

11. *Id.*

12. 477 S.W.2d 873 (Tex.Crim.App.1971).

13. *Id.* at 875.

14. *Id.*

15. *Id.*

16. *Id.* at 875–76.

17. *Id.*

18. Tex.R.App. P. 33.1.

We conclude that Hill adequately preserved his double jeopardy claim for our review. We therefore proceed to a discussion of the merits.

### III. Analysis

#### A.

The Fifth Amendment prohibits the State from putting a defendant in jeopardy twice for the same offense.[19] Jeopardy attaches in a jury trial when the jury is empaneled and sworn.[20] But the double jeopardy clause does not mean that every time a defendant is put to trial he is entitled to go free if the trial ends in a mistrial. If the mistrial was with the defendant's consent or based on "manifest necessity," a re-trial is not jeopardy barred.[21]

Although the Supreme Court has not set forth precise circumstances in which manifest necessity exists, a trial judge's discretion to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances."[22] Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error.[23]

The judge is required to consider and rule out "less drastic alternatives" before granting a mistrial.[24] The judge must review the alternatives and choose the one which best preserves the defendant's "right to have his trial completed before a particular tribunal."[25] The judge need not expressly state his reasons in the record as long as the basis for his ruling is adequately disclosed by the record.[26] When a trial judge grants a mistrial despite the availability of a less drastic alternative, there is no manifest necessity and he abuses his discretion.[27]

The initial burden of proving a double jeopardy violation is on the defendant.[28] He meets that burden by proving that he was tried for the same offense after a mistrial. The burden then shifts to the State to prove manifest necessity for the mistrial.[29]

---

19. *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Alvarez v. State,* 864 S.W.2d 64, 65 (Tex.Crim.App. 1993).

20. *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Downum v. United States,* 372 U.S. 734, 735–736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

21. *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *State v. Torres,* 805 S.W.2d 418, 422 (Tex.Crim.App.1991); *Alvarez,* 864 S.W.2d at 65.

22. *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum,* 372 U.S. at 736, 83 S.Ct. 1033; *Brown v. State,* 907 S.W.2d 835, 839 (Tex.Crim.App. 1995).

23. *Brown,* 907 S.W.2d at 839.

24. *Brown,* 907 S.W.2d at 839; *Ex parte Little,* 887 S.W.2d 62, 66 (Tex.Crim.App.1994); *Harrison v. State,* 788 S.W.2d 18, 22 (Tex.Crim. App.1990); *Torres,* 614 S.W.2d at 442.

25. *Brown,* 907 S.W.2d at 839; *Harrison,* 788 S.W.2d at 21.

26. *Washington,* 434 U.S. at 516–17, 98 S.Ct. 824.

27. *Brown,* 907 S.W.2d at 839; *Little,* 887 S.W.2d at 66; *Harrison,* 788 S.W.2d at 23–24.

28. *Anderson v. State,* 635 S.W.2d 722, 725 (Tex.Crim.App.1982); *Torres,* 805 S.W.2d at 421.

29. *Washington,* 434 U.S. at 505, 98 S.Ct. 824; *Kennedy,* 456 U.S. at 683–84, 102 S.Ct. 2083 (Stevens, J., concurring). *See also Grady v. Corbin,* 495 U.S. 508, 522 n. 14, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

### B.

In this case, the State cannot satisfy its burden of proving manifest necessity for the mistrial because the record does not reflect that the trial court considered less drastic alternatives.[30] The Court of Appeals was correct in concluding that this record does not demonstrate manifest necessity for a mistrial.

The State argues that it could satisfy its burden of proof if we abated this case and allowed it to establish what occurred during the in-chambers conference. The State contends that this conference reflects that the judge granted the mistrial because the defense objected to proceeding to trial with eleven jurors, but the defense would not request a mistrial. There is nothing in the record to support the State's claim. Although the State relies on an affidavit attached to its motion to abate, that affidavit is not part of the appellate record and may not be considered.[31]

To show manifest necessity for the mistrial, the State would have to show that there was no less drastic alternative available. In order to determine whether an abatement is a reasonable remedy to allow the State to meet its burden of proof, we must first determine whether proceeding to trial with eleven jurors was an available alternative in this case. We look to Art. 36.29(a) of the Code of Criminal Procedure and Government Code § 62.201, as well as our opinions in *Ex parte Fierro,*[32] *Hatch v. State,*[33] and *Carrillo v. State.*[34]

Article 36.29(a) states the general rule that "[n]ot less than twelve jurors can render and return a verdict in a felony case." It then sets forth an exception: "however, when pending the trial of any felony case, one juror may die or be disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict." Government Code § 62.201 provides another exception: "The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors." So our laws provide two instances in which a trial can proceed with eleven jurors: (1) when the parties consent under § 62.201, and (2) regardless of the parties' consent, when a juror dies or becomes disabled under Art. 36.29(a).[35]

We discussed the interplay of these two statutes in *Hatch.* We had previously held in *Ex parte Hernandez*[36] that a defendant could not waive the requirement of a 12 member jury. We overruled that decision in *Hatch,* concluding that based on Code of Criminal Procedure Art. 1.15 and Government Code § 62.201, a jury can proceed with eleven jurors if the defendant consents. Additionally, in *Ex parte Fierro,* the judge declared a mistrial. There was nothing in the record to demonstrate that the judge considered less drastic alternatives, one of which would have been "to determine if the parties would be willing to proceed with fewer than twelve jurors under Tex. Govt.Code, § 62.201."

30. *See Little,* 887 S.W.2d at 66; *Washington,* 434 U.S. at 516–17, 98 S.Ct. 824.

31. *Moore v. State,* 999 S.W.2d 385, 398–99 (Tex.Crim.App.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

32. 79 S.W.3d 54, 2002 Tex.Crim.App. LEXIS 142 (Tex.Crim.App., 2002).

33. 958 S.W.2d 813 (Tex.Crim.App.1997).

34. 597 S.W.2d 769 (Tex.Crim.App.1980)

35. *See Hatch,* 958 S.W.2d at 816 n. 4.

36. 906 S.W.2d 931 (Tex.Crim.App.1995).

Both *Hatch* and *Fierro* imply that a trial cannot proceed with eleven jurors unless the defendant consents. But significantly, neither of these cases involved a disabled juror. In *Hatch*, one of the jurors was not a United States citizen. In *Fierro*, one of the jurors was erroneously excused for cause because she was the defendant's cousin. Since she was not related to the defendant within the third degree of consanguinity, the trial judge erred in excusing her. In both cases, since the juror was not disabled, the only way the court could proceed with eleven jurors was under § 62.201, which requires the parties' consent.

 This case is different. Here, the juror was disabled. A juror is disabled if she has a "physical illness, mental condition, or emotional state" which hinders her ability to perform her duties as a juror.[37] This juror was unable to perform her duties due to "debilitating panic attacks." That brings this case within the ambit of Art. 36.29, which does not require the parties' consent. On the contrary, Art. 36.29 requires that the trial proceed with eleven jurors if one juror dies or becomes disabled from sitting. The statute states that if this occurs, "the remainder of the jury shall have the power to render the verdict." There is no need to obtain anyone's consent in this instance.

We essentially said this in *Carrillo*, although we did not mention Art. 2191 of the Civil Statutes, which was § 62.201's predecessor. Nevertheless, we stated that the language of Art. 36.29 "and the cases applying it make it clear that the Legislature's intent was to limit the Article's application to those cases where the juror was physically or mentally impaired in some way...."

 Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error.[38] In this case, proceeding to trial with eleven jurors would not have made it impossible to arrive at a fair verdict or to continue with trial because Art. 36.29(a) required it. Likewise, it would not have presented automatic reversible error on appeal because the procedure is not just authorized but compelled by the statute.

We must reject the State's request for an abatement because, since the juror was disabled, Hill's consent was not necessary to proceed to trial. Even if we granted the State's request and abated this case for a hearing in the trial court, there is nothing that the State could possibly establish at that hearing which would demonstrate manifest necessity. Regardless of what happened in that in-chambers conference, there was no manifest necessity for this mistrial. Under Art. 36.29(a), there couldn't be. The judge abused his discretion in granting the mistrial, and the subsequent prosecution was barred by double jeopardy.

## IV. Conclusion

We conclude that proceeding to trial with eleven jurors was not just an available alternative in this case. It was a mandatory alternative under our constitutional, statutory, and case law. Regardless of Hill's consent, the judge was required to proceed to trial with eleven jurors. As a result, there could not be manifest necessity for a mistrial under these facts. Therefore, we need not decide whether abatement is permissible,

---

37. *Landrum v. State,* 788 S.W.2d 577, 579 (Tex.Crim.App.1990).

38. *Brown,* 907 S.W.2d at 839.

because even if it is, it would not be a useful tool in this case. The law does not require a futile act.[39] We dismiss grounds one through four of the State's petition, overrule grounds five and six, and affirm the judgment of the court of appeals.

KELLER, P.J., dissented without opinion.

COCHRAN, J., filed a dissenting opinion in which HOLCOMB, J., joined.

COCHRAN, J., filed a dissenting opinion in which HOLCOMB, J., joined.

I respectfully dissent. First, I believe that appellant failed to produce evidence to support his double jeopardy claim. Second, I do not believe that a trial judge is *required* to proceed with eleven jurors under article 36.29(a) if a juror becomes disabled, rather he has discretion to declare a mistrial for manifest necessity.

### I.

The record shows that the parties picked a jury in this non-death penalty capital murder case on November 10th. The jury was sworn in at noon and told to return at 9:00 a.m. the next day for the start of testimony. The next morning, the record begins at 11:03 a.m. with the trial judge's statement, outside the jury's presence: "All right. Back on the record." The judge noted for the record that, on the previous afternoon, a juror called the court coordinator and was "hysterical, said she couldn't continue." The judge related that

this juror returned that morning and produced her own and a doctor's note, which attested to the juror's anxiety disorder and inability to perform adequately as a juror.

When the judge asked if he had anything further, defense counsel responded that the juror had not indicated any medical problem during the two days of voir dire or on her juror questionnaire. "Outside of that, Judge, we don't have anything else to offer for this hearing." The trial judge then stated:

> All right. There's been lengthy discussions in chambers about this. The Court, *having weighed all the options*, is now going to, on Court's own motion, declare a mistrial. (emphasis added)

Both the State and defense objected to the declaration of a mistrial, but neither offered the trial court any additional options to consider after the "lengthy" discussions in chambers [1] nor did either side explain its opposition on the record. Hearing nothing more, the trial court responded: "All right. All right. With that, I'm going to overrule your objections. I'm going to declare a mistrial." And he did.

Both the State and defense counsel stated that they were ready, willing, and anxious to pick a new jury and to begin testimony the next day. At that time, appellant's counsel announced: "Judge, subject to a motion to dismiss on the grounds of a double jeopardy claim that I anticipate will be filed prior to Monday when we begin jury selection, we'll be ready." As promised, appellant filed his motion, which stated:

---

**39.** *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

**1.** Because the trial court instructed the jury to return at 9:00 a.m. on November 11th, but the official hearing record begins at 11:03 a.m., I infer that these in-chamber discussions about the jury member and the possibility of a mistrial lasted approximately two hours. Al-

though the State submitted a sworn affidavit to this effect (and setting out what it contends was the content of these discussions) to the court of appeals in an effort to have the case abated to the trial court for explicit findings concerning the in-chambers discussions, I do not consider this affidavit for the truth of its contents as it was not part of the trial record.

On November 11, 1999 the Honorable Judge of this Court declared a Mistrial "Sua Sponte" over the objection of both the State and Defendant.

The Defendant alleges that there was no Manifest Necessity that would have allowed the Court to declare the Mistrial "Sua Sponte."

That was appellant's "allegation," but he did not offer any evidence to support his claim of a lack of "manifest necessity." He made no argument that the trial judge failed to consider all available options, nor did he suggest any alternative. What he said was:

We don't need to argue the motion. The motion speaks for itself. Have you seen it?

When the trial judge denied the motion, defense counsel stated:

Inasmuch as you summarily denied my motion to dismiss on double jeopardy grounds much in the same thing as you sua sponte granted that mistrial, I would request findings of fact and conclusions of law with regard to the mistrial that you declared last Thursday.

The trial judge agreed to do so, but appellant did not forward any such findings of fact or conclusions of law to the appellate court. Motions which "speak for themselves" frequently do not speak well.

Appellant had the burden to prove, by a preponderance of the evidence, that his double jeopardy claim was valid.[2] In the present case, appellant offered no evidence at all. His motion was not self-proving; his allegations were not-self-proving.[3] His claim fails as a matter of law.

A trial judge may sua sponte declare a mistrial for "manifest necessity."[4] As the

---

**2.** *See Anderson v. State,* 635 S.W.2d 722, 725–26 (Tex.Crim.App.1982) ("the burden is on the defendant to go forth at his second trial with evidence in support of his allegation of former jeopardy. A plea of former jeopardy constitutes nothing more than a pleading and does not establish the truth of the issues of fact alleged therein .... [w]hen the record fails to contain the evidence offered in support of the plea of jeopardy, this Court is in no position to review a contention asserting that a trial court erred in overruling the plea"); *see also Zimmerman v. State,* 750 S.W.2d 194, 209 (Tex.Crim.App.1988) ("[a] plea of former jeopardy constitutes nothing more than a pleading and does not establish the truth of the issues of fact alleged therein").

**3.** *Anderson,* 635 S.W.2d at 725.

**4.** In *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the Supreme Court underscored the breadth of a trial judge's discretion, and the reasons therefor, to declare a mistrial:

Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may

be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.

*Id.* at 368, 81 S.Ct. 1523; *see also Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ("the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise sound discretion on the subject") (quoting *United States v. Perez,* 22 U.S. 579, 580, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824)).

In *Cherry v. Director, State Bd. of Corrections,* 635 F.2d 414, 416 n. 3 (5th Cir.1981), the Fifth Circuit explicitly noted that the defendant failed to offer "any suggestion, proposal or motion," as an alternative to the trial judge's sua sponte decision to excuse a juror whose mother had died and to declare a mistrial. The court further held that "a trial judge does not err for failing to consider or adopt a specific alternative for a mistrial," nor does the Constitution "require canvassing of specific alternatives or articulation of their inadequacies." *Id.* at 418. In sum, "[a] trial

court of appeals correctly stated in this case: "We review the trial court's finding of manifest necessity for a mistrial by applying an abuse of discretion standard."[5] Here, as in *Arizona v. Washington*:[6]

> The trial judge did not expressly find that there was "manifest necessity" for a mistrial; nor did he expressly state that he had considered alternative solutions and concluded that none would be adequate.[7]

In affirming the state judge's discretion to declare a mistrial, the Supreme Court held that the federal circuit court "applied an inappropriate standard of review to mistrial rulings of this kind, and attached undue significance to the form of the ruling."[8] The same occurred here.

> The record facts in this case include:
>
> * This was a non-death penalty capital murder case;[9]

judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though '[i]n a strict, literal sense, the mistrial [is] not necessary.'" *Id.* at 418–19.

5. *Hill v. State*, No. 2–99–527–CR, slip op. at 5 (citing *Arizona v. Washington*, 434 U.S. 497, 509–10, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978))

6. 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

7. *Id.* at 501, 98 S.Ct. 824.

8. *Id.* at 503, 98 S.Ct. 824.

9. A capital murder charge is the most serious criminal case tried in Texas courts, and thus it is one in which a full, twelve-man jury is especially important, not only to the defendant but also to society and the ends of public justice. *See Arizona v. Washington*, 434 U.S. at 504 n. 11, 98 S.Ct. 824 ("a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments"); *see also* note 20 *infra*.

* After the jury was sworn in, but before any witnesses testified, one juror became disabled because of medical or mental stress;[10]

* "Lengthy" discussions occurred in chambers about this situation between 9:00 a.m. and 11:03 on November 11th;

* During those discussions, the trial judge "weighed all the options";

* After weighing all the options, and hearing no alternate suggestions or options, on the record, from either the State or the defense, he declared a mistrial;

* Both the State and appellant objected to the mistrial; neither explained their objections on the record;

* There is no evidence that the trial judge *did not* consider and "weigh all

10. The double jeopardy clause protects a defendant's "valued right to have his trial completed by a particular tribunal," because "a second prosecution may be grossly unfair." *Arizona v. Washington*, 434 U.S. at 503, 98 S.Ct. 824. "It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Id.* at 503–504, 98 S.Ct. 824 (footnotes omitted). The risks that the double jeopardy provision is designed to avoid are barely applicable here: appellant's financial and emotional burden increased only by one additional morning of voir dire; the delay between the first mistrial and the start of the second one was a mere four days; no prosecution witnesses testified in the first trial, so there could be no honing of their testimony based upon perceived imperfections in an original trial; finally, it is difficult to think of how this mistrial, occurring before any opening statements, testimony, disclosure of defense strategy, could have increased the risk that appellant, though innocent, might have been convicted by the second jury but would not have been convicted by the original jury.

the options," as he stated on the record that he had done.

## II.

Clearly one option that the trial court did consider, if we believe the trial judge, was to proceed with eleven jurors as permitted under article 36.29(a). This is where I respectfully disagree with the majority. Article 36.29(a) does not *require* a trial judge to continue a trial with eleven jurors, regardless of the objections of the defendant or the State. Article 36.29(a) reads, in pertinent part:

Not less than twelve jurors can render and return a verdict in a felony case.... Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury *shall have the power to render the verdict;* but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

Although a jury of eleven *can* render a verdict in a criminal trial, this does not mean that a trial judge must *require* a jury of eleven to render a verdict. There is an enormous difference between having the "power" to do something and being required to do it. For example, a jury has the *power* to return a verdict that flies in the face of the law and the facts,[11] but that does not mean that a trial judge must *require* jury nullification.

Furthermore, reading article 36.29(a) to require a judge to continue a trial with eleven jurors, even though no witness has testified, seems peculiar because article 36.29(c) states that both the defendant and State must consent to continue with eleven jurors if a juror becomes disabled after the testimony is complete and the jury charge is read.[12] I cannot easily reconcile a statute that forces a trial judge to start or continue a trial with eleven jurors despite the objections of the defendant and State, yet *requires* the parties' consent to continue to a verdict with eleven jurors once the jury charge has been read.[13]

In *Harrell v. State,*[14] this Court affirmed the Fourteenth Court of Appeals which had upheld the defendant's right to expressly waive a twelve member jury and consent to proceed with eleven jurors when one of them became disabled.[15] Nei-

11. *See Ramos v. State,* 934 S.W.2d 358, 367 (Tex.Crim.App.1996) ("As for the so-called right to jury nullification, ... [t]he jury has the power to nullify, but the appellant does not have the right to a jury who will nullify"); *Mouton v. State,* 923 S.W.2d 219, 221–22 (Tex.App.-Houston [14th Dist.] 1996, no pet.)("while jury nullification may exist as a part of our justice system, it is not a legal standard and is not a constitutional right of the defendant. The court's duty is to instruct the jury on the law").

12. Tex.Code Crim. Proc. Art. 36.29(c) (stating that, once the jury charge is read, if a juror "becomes so sick as to prevent the continuance of his duty ... the jury shall be discharged, except that on agreement on the record by the defendant, the defendant's

counsel, and the attorney representing the state 11 members of a jury may render a verdict").

13. Section 62.201 of the Government Code explicitly permits the parties to agree to try a case in district court with fewer than twelve jurors. Tex. Gov't Code § 62.201 ("[t]he jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors").

14. 980 S.W.2d 661, 661–662 (Tex.Crim.App. 1998).

15. *Harrell v. State,* 923 S.W.2d 104, 111 (Tex. App.-Houston [14th Dist.] 1996) ("[a]rticle V, § 13 of the Texas Constitution mandates a petit jury of twelve jurors in district court.

ther this Court nor the court of appeals suggested that a trial court is *required* to proceed with eleven jurors when one juror becomes disabled.[16]

Finally, making article 36.29(a) a bar to judicial discretion in declaring a mistrial for manifest necessity when one juror becomes disabled during trial, poses the potential for enormous waste of judicial resources. Suppose, for example, that the State had announced that it needed three weeks to put on its evidence or suppose that another juror was constantly coughing, sneezing, and wheezing. Does the trial judge not have any discretion to assess the probabilities that, during the trial or deliberations, a second juror might become disabled, bringing the total number of jurors down to ten and thereby requiring a mistrial? I cannot conclude that the Legislature, in enacting article 36.29(a) prohibited the trial court from exercising any judicial discretion in declaring a mis-

trial for manifest necessity when one juror becomes disabled.

Federal courts, in considering whether a mistrial is manifestly necessary when a juror becomes disabled, give trial judges considerable discretion in deciding whether or not to proceed with eleven jurors.[17] At least two federal circuits have explicitly held that there is no double jeopardy bar when a trial judge refuses to proceed with eleven jurors even when the defendant expressly states his desire to do so.[18]

Because there is absolutely no record evidence that appellant consented to continuing the trial with eleven jurors, I believe the trial court did not abuse its discretion in declaring a mistrial. A defendant is constitutionally entitled to a jury trial. Under normal circumstances, a Texas defendant is entitled to a twelve-person jury trial.[19] To read arti-

An exception is allowed when a juror becomes disabled. In that instance the remainder of the jury may render the verdict.... The specific issue before us is whether appellant's waiver of her right to a jury of twelve was valid even though not in writing. We believe that it was"); *compare Bates v. State,* 843 S.W.2d 101, 103–05 (Tex.App.-Texarkana 1992, no pet.) (waiver of twelve member jury when one member purportedly became disabled during trial could not be presumed from silent record).

16. *Harrell,* 980 S.W.2d at 661–62; *Harrell,* 923 S.W.2d at 111.

17. *See United States v. Holley,* 986 F.2d 100, 103–04 (5th Cir.1993) (trial judge's sua sponte declaration of mistrial when one juror became ill did not violate defendant's double jeopardy rights; trial court exercised "sound discretion in determining that manifest necessity existed for the declaration of a mistrial"); *United States v. Ruggiero,* 846 F.2d 117, 122–23 (2nd Cir.1988) (although "[n]either the court, the Government, nor defense counsel looked into the possibility ... of continuing with eleven jurors," the court's "mistrial ruling is entitled to great deference irrespective of any statement of reasons by the trial

court"); *Parker v. United States,* 507 F.2d 587, 588–89 (8th Cir.1974) (trial judge did not abuse his discretion in declaring mistrial when juror was excused and not all defendants would consent to continuing with eleven jurors).

18. *See United States v. Potash,* 118 F.2d 54, 56 (2d Cir.1941) (when one juror unable to continue, the trial court "had discretion to discharge the jury, even if both parties had consented (as they did not) to proceed with the reduced number"); *Gardes v. United States,* 87 F. 172, 177 (5th Cir.1898).

19. TEX. CONST. Art. V, section 13 ("Grand and petit juries in the District Courts shall be composed of twelve persons.... When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury *shall have the power to render the verdict;* provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict"). The language in article 36.29(a) mirrors that in the constitution, but neither provision states that an eleven member jury, which has the power to render a verdict, is thereby required to do so.

cle 36.29(a) as *forcing* all defendants to proceed with an eleven-person jury whenever one juror becomes disabled before the charge is read, diminishes the defendant's right to a jury trial.[20] It also seems to contradict this Court's holding in *Hatch v. State,*[21] in which Presiding Judge McCormick stated:

> Therefore, we overrule [*Ex Parte*] *Hernandez* [906 S.W.2d 931 (Tex.Crim.App., 1995)] and hold a defendant may waive Article 36.29(a)'s requirement that not less than twelve jurors can return a verdict in a noncapital felony case.[22]

Before a defendant can waive a twelve-person jury, however, he must have a right to it. A rule *requiring* a judge to proceed with an eleven-person jury eliminates any such right.

Therefore, I respectfully dissent.

**20.** In *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the Supreme Court held that a criminal defendant had the power to consent to a trial by less than twelve jurors when one becomes disabled. However, that was a "power" that the trial judge also must consent to.

> In affirming the power of the defendant in any criminal trial to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons ... we do not mean to hold that the waiver must be put into effect at all events. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of the government counsel and the sanction of the court must be had, in addition to the express and

intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, and *with a caution increasing in degree as the offenses dealt with increase in gravity.*

281 U.S. at 312–13, 50 S.Ct. 253. (emphasis added). According to the Supreme Court, then, a trial judge's discretion to declare a mistrial in lieu of proceeding with eleven jurors, is greatest in a capital murder trial such as the present one. His discretion to declare a mistrial should be unquestioned when, as here, neither the State nor the defendant have agreed, on the record, to proceed with eleven jurors.

**21.** 958 S.W.2d 813 (Tex.Crim.App.1997).

