Opinion issued February 12, 2004























In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00337-CR
____________
 
WILBERT SHURON JONES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 1148489
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Wilbert Shuron Jones, guilty of the misdemeanor
offense of assault of a family member and, after finding true an allegation in an
enhancement paragraph that appellant had a prior misdemeanor conviction, assessed
his punishment at confinement for 300 days and a $500 fine. In his sole point of
error, appellant contends that, after granting the State’s motion for a mistrial in his
previous trial, the trial court erred in proceeding to trial in violation of his right not
to be placed in jeopardy twice for the same offense.


 We affirm.
Facts
          On March 12, 2003, during appellant’s first trial, appellant and the State
conducted a voir dire examination of a venire panel of 30 jurors. During appellant’s
voir dire examination, a member of the venire, Hoy Miller, disclosed that, in 1969,
he was tried and then acquitted of the offense of aggravated assault. At the close of
voir dire, the State challenged Miller for cause, and the trial court denied the
challenge. The parties then exercised their peremptory challenges, but neither side
struck Miller and he was one of the six members of the venire empaneled on the jury. 
The trial court then swore in the jury and, before excusing the jury for lunch, gave the
following instruction:
The Court:Wear those jury badges at all times, the reason I ask
you to do that is I have asked the lawyers to instruct
their witnesses that any witness they intend to call
that those witnesses are not to approach you in
anyways [sic] or attempt to talk to you about this
case whatsoever. And that instruction also applies
to the lawyers . . .

          During the lunch break, an attorney for the State, Lincoln Godwin, saw Miller
speaking with appellant’s mother, Debra Boneparte, outside of the courtroom. 
Godwin told the bailiff what he saw, and the bailiff subsequently relayed the
information to the trial court. When the jury returned from lunch, the trial court
questioned appellant’s mother and Miller as follows:
The Court:Mrs. Boneparte, you talked to Mr. Miller out
there?
 
[Appellant’s mother]:Yes, I spoke to him.
 
The Court:Did you see his jury badge?
 
[Appellant’s mother]:Yes, I did.
 
The Court:Why did you talk to him?
 
[Appellant’s mother]:We were not really engaging in a
conversation. He just said, made a comment
about the cell phone and that was it.
 
The Court:No other conversation?
 
[Appellant’s mother]:No, sir.
 
The Court:All right. Bring out Mr. Miller. Hello, Mr.
Miller, I understand that you were permitted
to separate from the jury when they went to
lunch, you went to your office and then came
back - -
 
[Miller]:Picked up my briefcase.
 
The Court:- - to court. All right. In the course of that,
we weren’t informed of your separation so we
had no way to know that you were going to be
over here, and I understand you were out in
the hallway and a person who was identified
as a potential witness, you engaged in
conversation?
 
[Miller]:They wheeled her up, left her there, and she
said that it was cold in here, and I said, yeah,
and that’s about it, and that’s when this
gentlemen came in.
 
The Court:Okay. So there was no exchange of - -
 
[Miller]:No, sir.
 
The Court:- - discussion about anything about this case?
 
[Miller]:None, whatsoever.
 
The Court:Okay. So even that brief encounter is not
going to decide this case on what you hear
from the witness stand?
 
[Miller]:No, sir.
 
The Court:Okay. If you’ll return to the jury room. 
Thank you.

          At this point, the State moved for a mistrial and, in the alternative, requested
that Miller be instructed that “it was not the State who necessarily brought this to the
[C]ourt’s attention or made any issue in regards to [Miller] not following instructions
so that he does not hold that against the State.” In response, appellant stated that the
conversation between Miller and appellant’s mother was “innocuous” and “[he] [did
not] think that there should be a mistrial.” While the trial court was considering the
State’s motion and requested instruction, Godwin addressed the Court as follows:
. . . it was the [S]tate, a member of the State, as myself, who did see
[Miller] in the hallway speaking with [Ms. Boneparte], who I understand
to be their key critical witness in the case. I looked at [Miller], nodded
at him, obviously realizing that he was a juror, saw Ms. Boneparte,
obviously recognizable by a hairstyle and the fact that she is confined to
a wheelchair engaging in conversation, I didn’t hear anything about their
conversation, but one, I think that it would be, based on the eye contact
that I made with [miller], I think without question, he would know who
brought this to the [C]ourt’s attention . . .

          Following Godwin’s statement, the State “more strongly urge[d]” its motion
for a mistrial, and the trial court granted it. Appellant responded “please note for the
record the [appellant’s] objection, Your Honor.” The trial court then rescheduled
appellant’s case for trial for the following day.Double Jeopardy
          In his sole point of error, appellant argues that the trial court violated his Fifth
Amendment right “not to be placed in jeopardy twice for the same offense” because
“there was no ‘manifest necessity’ for declaring a mistrial in [his] case.”
          Jeopardy attaches in a jury trial when the jury is empaneled and sworn. Hill v.
State, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002). But the double jeopardy clause
does not provide that, every time a defendant is put to trial, he is entitled to go free
if the trial ends in a mistrial. Id. If a mistrial was with the defendant’s consent or
based on “manifest necessity” a re-trial is not jeopardy barred. Id. “Manifest
necessity” exists when the circumstances render it impossible to arrive at a fair
verdict, when it is impossible to continue with the trial, or when the verdict would be
automatically reversed on appeal because of trial error. Id.
          A trial court must consider and rule out less drastic alternatives before granting
a mistrial. Id. When a trial court grants a mistrial despite the availability of less
drastic alternatives, there is no “manifest necessity” and the trial court abuses its
discretion. Id. If the record shows that the trial court exercised sound discretion in
finding a “manifest necessity” for a re-trial, the court’s declaration of a mistrial is not
incorrect just because a reviewing court might have ruled differently. See Ledesma
v. State, 993 S.W.2d 361, 365 (Tex. App.—Fort Worth 1999, pet. ref’d).
          Here, although appellant objected to the State’s motion for mistrial, he never
raised a double jeopardy objection in the trial court. The day after the trial court
declared a mistrial and before the voir dire of the second venire panel, the trial court
asked the parties whether “there were any pretrial matters or motions that needed to
be addressed.” Appellant simply responded “[n]o, judge.” Accordingly, appellant
failed to preserve error in the trial court. See Tex. R. App. P. 33.1(a)(1)(A).
          An appellant waives his double jeopardy claim by not objecting at trial when
the violation is not clearly apparent on the face of the record. Gonzalez v. State, 8
S.W.3d 640, 643 (Tex. Crim. App. 2002). However, an appellant is excused from this
preservation requirement when (1) the undisputed facts show the double jeopardy
violation is clearly apparent on the face of the record, and (2) enforcement of the
usual rules of procedural default serves no legitimate state interests. Id.
          We conclude that a double jeopardy violation is not “clearly apparent” on the
face of the record. The trial court could have reasonably believed that it was
necessary to declare a mistrial because the circumstances rendered it impossible for
Miller to arrive at a fair verdict. See Hill, 90 S.W.3d at 313. The trial court expressed
concern as to why appellant’s mother, who had been identified as a witness and who
was present in the courtroom when the trial court issued its instruction, spoke to
Miller. Additionally, the trial court could have believed that, as a result of speaking
with appellant’s mother, a “key critical witness” for appellant, Miller developed a pre-existing sympathy towards her because she was “wheeled” up and “left” outside the
courtroom. Moreover, because Miller made eye contact with Godwin while speaking
with appellant’s mother, the trial court could have believed it likely that Miller would
know that Godwin reported the incident to the trial court. Accordingly, because a
double jeopardy violation is not clearly apparent on the face of the record and
appellant did not raise a double jeopardy objection in the trial court, appellant has
waived error.
          We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Do not publish. Tex. R. App. P. 47.2(b).