In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-09-00122-CR


____________________



EX PARTE SARAH ELIZABETH O'CONNOR






On Appeal from the County Court at Law No. 3


Montgomery County, Texas


Trial Cause No. 07-226992





 

MEMORANDUM OPINION


 In this appeal from the denial of a pre-trial application for writ of habeas corpus, 
Sarah Elizabeth O'Connor contends that further prosecution of a charge of driving while
intoxicated is barred by the Fifth Amendment of the United States Constitution and Article
I, § 14 of the Texas Constitution. The trial court found that the prosecutor's failure to
produce potentially exculpatory material was inadvertent. The record supports the trial
court's ruling that double jeopardy does not bar further prosecution. Accordingly, we affirm
the trial court's order.

 The trial court ordered that, upon request by the defense, the State must produce for
inspection fourteen days before trial all written and recorded statements, including video
recordings, of the defendant. On the day of trial, O'Connor filed a written pre-trial objection
to the admission of digital images of the defendant on grounds that the State violated the
discovery order. In the pre-trial hearing, defense counsel asked the trial court to rule
"specifically, whether or not there exists a videotape of my client, either on the scene by
either one of the two officers on the scene or back at the jail. . . ." The prosecutor told the
trial court that the State did not have a videotape "either at the jail or on scene" because the
arresting officer "thought his - - his equipment was running, but he had [run] out of either
tape or out of battery." Defense counsel argued that the State's failure to disclose that the
equipment was not working was a Brady violation. (1) Counsel argued that the State's failure
to disclose the matter fourteen days before trial prevented him from obtaining the
maintenance records for the equipment. The prosecutor responded that the prosecutor who
had previously been in charge of the case "when he passed it off to me, he put this sticky file
in the file on which it states there is no video, that the video had run out prior to the stop." 
The prosecutor said, "That sticky has been in there for at least three or four months."

 After voir dire and before opening statements, the prosecutor informed the court, as
follows:

 I was -- this is the first time I have gotten to meet with my first officer, the
arresting officer. He was the officer whose car had the malfunctioning
videotape. And while I was prepping him during lunch because he has been 
on vacation, I learned that he changed out the tape and he does have a
videotape of the defendant from the police department to the SO where she
took the breath test. He doesn't have it with him because he went on vacation
last week and didn't want to leave it in his car. So it is at his house. He can
get it tomorrow.


 So I don't intend on using it, but if he wants to look at and use it in his
case-in-chief - - or I will even play it, if he wants me to. But I can't take a
look at it until tomorrow. I just wanted to bring that to his attention.

 

 The prosecutor told the trial court that she was talking to the officer for the first time
that day and the officer had told her, "'[W]ell, I think I changed the tape and I might have
a tape of it.'" Defense counsel asked the trial court to strike the State's pleadings as a
sanction. The trial court recessed for the day so that defense counsel and the prosecutor
could view the videotape.

 The next morning, O'Connor filed a "Motion for Mistrial and Sanctions." The motion
alleged that the prosecutor "knew of the existence of the defendant's on-scene videotape, yet
she failed to disclose this valuable piece of evidence to the defense in violation of the Court's
Discovery Order." At the hearing on the motion for mistrial, defense counsel argued that the
videotape was exculpatory because, among other things, it showed the defendant's "engaging
in conversation where she knows what is going on." Counsel re-urged O'Connor's motion
to suppress "specifically with regard to that video" and asked for a mistrial "based on the
intentional suppression of material and exculpatory evidence in a criminal case that this
prosecutor had an affirmative duty to go out and locate and disclose to me." The prosecutor
told the trial court that "until yesterday at lunch time I knew nothing of this tape"; she 
offered to have the former counsel assigned to the case testify as well. The trial court asked, 
"[H]ow is it possible, that neither of you knew about the existence of this video?" The
prosecutor explained as follows:

 Let me make clear for the record, what we have is not a video of the stop and
the field sobriety tests. The information that I gave the Court yesterday that
his videotape had run out and he thought it was running, that information is
accurate. We have no video of the field sobriety tests, anything of her on the
side of the road.


 It wasn't until [the arresting officer] took the defendant back to the
police department, went to extract his videotape that he realized that his player
or his recorder had not functioned. And he told me yesterday that it had been
acting up a lot, that they had been having problems and that's why he has new
equipment now.


 So when he realized that he did not record that, he put a new tape in the
instrument and recorded the transport from the Patton Village police
department to the sheriff's office in Conroe. That's the only thing that is on
the recording. And, in fact, when the videotape that we watched yesterday first
comes on, you hear [the officer] say "now we are recording" or "now we are
going." Because he realized once he got to the police department that the tape
had run out.


 The trial court asked, "[H]ow is it that all of that was just discovered in a 30-minute
period?" The prosecutor explained as follows:

 When [the State's counsel formerly assigned to the case] had this case, he was
preparing for this case and he specifically called the Patton Village police
department - - correct me if I'm wrong - - and he called this officer, Officer
Snipes, and he said, "Do we have a videotape?" And we were told no, that the
videotape had run out at the time.


 . . . . 


 Yesterday when I was talking with Officer Snipes in my office, I said,
"Now, I want to make sure I was not misrepresenting this fact. Did the
videotape run out or did the battery run out?"


 He said, "The videotape ran out. And that's why when I got back to the
office, I noticed it and I put a new tape in to record from the jail to the SO." 
And that was the first time I had ever heard of it.


 . . . .


 And, basically, someone is negligent here. It is either our office is
negligent or the officer is negligent. Either way, there is no bad faith here.


 The State then argued that the videotape was not exculpatory and argued that the
defendant could admit it into evidence if she chose. The trial court reviewed the videotape,
agreed with the defense that the tape was both favorable and material to the defense, and
granted the motion for a mistrial. The trial court made no finding at that time as to whether
the State's suppression of the videotape was willful, and signed an order that granted the
motion for mistrial without prejudice and set the case for trial the following month.

 O'Connor filed a pre-trial application for writ of habeas corpus. See Tex. Code Crim.
Proc. Ann. art. 11.09 (Vernon 2005). (2) In her application, O'Connor argued that state and
federal double jeopardy principles barred a retrial because "the first prosecution under this
indictment resulted in a mistrial without manifest necessity" and "the mistrial in this case was
caused by the prosecutor either intentionally or recklessly." O'Connor argued retrial was
barred because she was "harmed by the State's failure to reveal exculpatory evidence. . . ." 
Finding that "mistrial was NOT granted because of intentional or reckless acts of the
prosecution," but inadvertence, the trial court denied the habeas petition.

 On appeal, O'Connor concedes the same standard applies to her double jeopardy
claims under the state and federal constitutions. See Ex parte Lewis, 219 S.W.3d 335 (Tex.
Crim. App. 2007). Double jeopardy bars a retrial after a defendant successfully moves for
a mistrial only when it is shown that the prosecutor engaged in conduct that was intended to
provoke the defendant into moving for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 679,
102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); Lewis, 219 S.W.3d at 336.

 O'Connor cites Alvarez v. State as authority for her argument that a retrial is barred
because the first prosecution resulted in a mistrial without manifest necessity. See Alvarez
v. State, 864 S.W.2d 64 (Tex. Crim. App. 1993). In that case, however, the defendant was
not urging a mistrial when one was granted by the trial court. Id. at 66. In Alvarez, defense
counsel moved for a mistrial based upon a comment to the jury by the trial judge concerning
the expected testimony of a co-defendant. Id. The trial court denied a motion for mistrial
made by Alvarez before jeopardy attached. Id. at 65. After the jury was seated and sworn,
the trial court reconsidered its ruling. Id. Counsel for Alvarez stated for the record that he
was not urging a motion for mistrial at that time. Id. at 66. In upholding the trial court's
denial of habeas relief, the Court of Criminal Appeals agreed the record supported a finding
of manifest necessity for a mistrial. Id. The "manifest necessity" analysis found in Alvarez
applies when the defendant does not consent to a mistrial. See, e.g., Illinois v. Somerville,
410 U.S. 458, 459, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (declaration of mistrial over
defendant's objection). "But in the case of a mistrial declared at the behest of the defendant,
quite different principles come into play." Kennedy, 456 U.S. at 672. The "manifest
necessity" standard has no place in the application of the double jeopardy clause when the
defendant himself elected to terminate the proceedings against him. Id.

 O'Connor cites Hill v. State as support for her argument that "[n]one of the
circumstances recognized as giving rise to a manifest necessity exist in the instant case." See
Hill v. State, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002). Hill, too, concerned a mistrial
granted sua sponte and without a motion for mistrial by the defendant and over his objection. 
Id. at 310. The Court of Criminal Appeals recognized in Hill that retrial is not jeopardy
barred "[i]f the mistrial was with the defendant's consent[.]" Id. at 313 (citing Kennedy, 456
U.S. at 672).

 Appellant also relies on Ex parte Little to support her argument that "[w]here a trial
judge grants a mistrial despite the available option of less drastic alternatives, there is no
'manifest necessity' prompting the decision and we will find an abuse of discretion." See Ex
parte Little, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994). Although Little's counsel did not
say that he objected to the trial court's sua sponte granting of a mistrial, the defendant did
not consent to the mistrial and the Court of Criminal Appeals noted that it was readily
apparent from the record that defense counsel sought to note for the record that manifest
necessity did not exist when the trial judge declared a mistrial. Id. at 65-66. Here, O'Connor
filed a motion for mistrial. Thus, Alvarez, Hill, and Little are inapposite.

 O'Connor also cites Ex parte Bauder as supportive authority for a double jeopardy bar
of a retrial when the mistrial was caused by the prosecutor either intentionally or recklessly. 
See Ex parte Bauder, 974 S.W.2d 729 (Tex. Crim. App. 1998). The Court of Criminal
Appeals overruled Bauder in Lewis. See Lewis, 219 S.W.3d at 337, 371. Since Lewis, the
standard for a defense-requested mistrial has been that found in Oregon v. Kennedy: that is,
the prosecutorial conduct giving rise to the successful motion for a mistrial was "'intended
to provoke the defendant into moving for a mistrial.'" Id. at 336 (quoting Kennedy, 456 U.S. 
at 679).

 The appellant also cites Ex parte Masonheimer as support for her argument that a
retrial is barred. See Ex parte Masonheimer, 220 S.W.3d 494 (Tex. Crim. App. 2007). 
Masonheimer's first two trials ended in mistrials caused by the State's Brady violations. Id.
at 495. The trial court granted Masonheimer's petition for writ of habeas corpus based on
double jeopardy, and the State appealed. Id. at 495, 505-06. Viewing the evidence in the
light most favorable to the trial court's ruling, the Court of Criminal Appeals held that the
evidence supported the trial court's ruling that Masonheimer's motions were necessitated by
the State's intentional failure to disclose exculpatory evidence with the specific intent to
avoid the possibility of an acquittal. Id. at 507. Here, the trial court found that the State's
failure to produce the tape before trial was inadvertent. This ruling is entitled to deference. 
See id.

 O'Connor argues the habeas court erred in denying her application for a writ of habeas
corpus because the mistrial was caused by prosecutorial misconduct. She points to the
violation of the trial court's discovery order, characterizes as "contumacious" the
prosecutor's statement to the trial court that the State had done "everything [it] could to
obtain the videotape," and complains that the prosecutor did not make the existence of the
videotape known until the trial judge returned to the bench after the lunch break. According
to O'Connor,

 the prosecutor knew that she would not be able to admit and publish the
videotape of the defendant's stop and alleged coordination exercises whereby
Officer Snipes concluded that defendant was intoxicated. The videotape was
the only other objective proof of the defendant's condition and without the
admission of that evidence the prosecutor knew that she had a small chance of
obtaining a conviction. So she purposefully and intentionally withheld it from
the defense in order to obtain a mistrial so that she could cure her error in a
second trial on the merits.


 When she presented her motion for mistrial to the trial court, however, O'Connor did
not suggest that the prosecutor withheld the tape from the defense for the purpose of escaping
the consequences of the State's discovery violation. Instead, O'Connor argued that the
videotape was "highly exculpatory," argued that had the videotape been produced in response
to the discovery order O'Connor would have called an expert witness to testify because
"[y]ou cannot have somebody acting as a person on that video acts and then have a breath
test that is almost two times the legal limit," and suggested the State had purposefully
withheld the evidence "in an effort to force a plea bargain or in order to gain a
conviction. . . ." The trial court viewed the tape and found that it was "both favorable and
material to the defense." Subsequently, O'Connor filed a habeas petition in which she
continued to argue that the State had suppressed the videotape because it was exculpatory,
not because its admission would be crucial to the prosecution. In fact, the petition for writ
of habeas corpus does not suggest that the prosecutor intentionally goaded defense counsel
into moving for a mistrial so as to avoid an inevitable acquittal; instead, O'Connor claimed
that "[t]he mistrial was caused by the prosecutor's intentional and reckless violation of Brady
v. Maryland. . . ."

 Generally, even prosecutorial misconduct that results in the granting of a defense
motion for mistrial will not bar a retrial. See Kennedy, 456 U.S. at 670. The narrow
exception occurs when the prosecutorial misconduct is intended to "goad" the defendant into
requesting the mistrial so that the State could subvert the protections of the double jeopardy
clause. Id. at 676. In the habeas proceeding in Oregon v. Kennedy, the issue was whether
the prosecutor acted with the specific intent to induce the defendant to move for a mistrial. 
See id. at 679.

 In this case, the nonexistence of the prosecutor's intent to provoke a mistrial can be
inferred from the objective facts and circumstances. See id. at 675. The State claimed the
first prosecutor assigned to the case asked the officer if there was a tape of the stop and field
sobriety tests. That explanation is uncontradicted in this record. The officer's answer, that
the stop and administration of the field sobriety tests was not recorded because the tape had
run out, has not been disproved. The State thus explained why the first prosecutor put a note
on the file that stated that there was no video. It is also uncontroverted in this record that the
officer was on vacation in the days before the trial. The second prosecutor explained that she
relied on the note placed in the file by the attorney previously assigned to the case and
explained why she did not verify the information with the officer until the lunch break on the
first day of trial. There is evidence in the record from which the trial court could infer that
neither prosecutor was aware of the existence of the tape prior to the trial.

 The objective facts in the record support the habeas court's finding that the late
disclosure was inadvertent. The prosecutor notified the trial court of the discovery violation
immediately after the lunch break and before testimony began. The tape had to be retrieved
from a distant location and there is no evidence that the prosecutor had an opportunity to
view the tape in order to determine whether it was favorable to the defense or to the State. 
Thus, the habeas court could have rejected the notion that the prosecutor suddenly revealed
evidence she had previously concealed in order to avoid going to trial without that evidence.

 There is little evidence in the record that could support a finding that the State
provoked a mistrial to avoid an acquittal. The mistrial was declared before testimony began.
The trial court had suppressed intoxilyzer maintenance records in the pretrial hearing, but the
trial court made only one ruling after jury selection and before the disclosure of the existence
of the tape. That ruling--that the breath tests results had not been suppressed and that the
State could reveal the results to the jury in the opening statement--was favorable to the State. 
The habeas court could rationally reject developments in the trial after jeopardy attached as
a motive for the State to provoke a mistrial to avoid an acquittal.

 The habeas court was free to accept the State's explanation for the conduct that led
to O'Connor's motion for mistrial and, under the standard set forth in Oregon v. Kennedy,
could rule that the prosecutor did not act with the intent to provoke a mistrial so as to avoid
an acquittal. The trial court did not abuse its discretion in denying O'Connor's habeas
petition. We hold that retrial is not barred by the state and federal constitutions. 
Accordingly, we overrule the appellant's two issues and affirm the trial court's order denying
the application for writ of habeas corpus.

 AFFIRMED.


 _______________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on September 3, 2009

Opinion Delivered September 30, 2009

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
2. The application cited Article 11.08, but the defendant was charged with a
misdemeanor offense. See Tex. Code Crim. Proc. Ann. art. 11.08 (Vernon 2005).