Detone Lewayne PRICE, Appellant

v.

The STATE of Texas, Appellee

NO. 14-15-00987-CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinions filed July 11, 2017

---

Clinton Morgan, Houston, TX, for State.

Allen C. Isbell, Houston, TX, for Appellant.

Panel consists of Justices Christopher, Jamison and Donovan

## OPINION

John Donovan, Justice

A jury convicted appellant Detone Lewayne Price of capital murder. The trial court sentenced appellant to life without parole. Appellant brings this appeal complaining of the trial court's failure to remove a juror and an in-court identification of him by an eyewitness. We affirm.

### BACKGROUND

The complainant, Salim, accompanied his father, Saif al Mazrouei, from the United Arab Emirates to Houston, Texas, for Saif to receive cancer treatment. One night, two men broke into their apartment. One of the men pointed a gun at the complainant's head and he gave them his wallet and phone. The men left the apartment; Saif then ran out. As the complainant was going through the doorway, he was fatally shot. The men took Saif's car.

The stolen car was found the next morning approximately one block from appellant's house. Fingerprints in the car matched those of appellant and Corey Perry. Saif selected both men from a photographic lineup.

Appellant was charged with capital murder in that, while in the course of a robbery, he shot Salim with a firearm. As noted above, the jury found appellant guilty as charged and he was sentenced to life without the possibility of parole.

### DISABLED JUROR

In his first issue, appellant claims one of the jurors ("L.W.") was disabled and should have been removed from the jury. See Tex. Code Crim. Proc. art. 36.29(a).[1]

---

1. Article 36.29 is entitled "If a Juror Dies or Becomes Disabled" and provides, in pertinent part: "(a) Not less than twelve jurors can render and return a verdict in a felony case.... Except as provided in Subsection (b), however, *after the trial of any felony case*

On the second day of trial, after testimony concluded, juror M.P. reported that another juror, whom she identified as the "younger" of two men with the same first name and wearing a plaid jacket, told the panel that he had seen news coverage of the case. According to M.P., "to be fair, we were not instructed not to watch the news and it was on the local news." M.P. said L.W. did not disclose any details. M.P. stated that L.W. suggested "this case was far more important than we realized or there were a lot of factors that we didn't realize they talked about in the news report that hadn't come out." M.P. thought L.W. "peaked [sic] a lot of interest with the way he phrased it." L.W. did not express any opinion on appellant's guilt. According to M.P., later that same day L.W. revealed appellant was eighteen and she did not recall that information having been presented in court.

The next day, the trial court individually questioned each juror. Two of the jurors had not heard any other juror discussing news coverage. Six of the jurors said another juror revealed that he had seen the case on the news; they all agreed no details were given. None of them mentioned learning appellant's age at the time of the offense. Two of the jurors described the juror who saw the news coverage as the "younger" of two men with the same first name and described the clothing worn by the younger of the two. When questioned by the trial court, L.W. denied having seen any news coverage or hearing anyone else discussing it.

*begins and a juror dies or,* as determined by the judge, *becomes disabled* from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict...." Tex. Code Crim. Proc. art. 36.29 (emphasis added) (subsection (b) applies in a capital case in which the state seeks the death penalty).

The trial court asked L.W. "is there anything that has tainted your view of the evidence in this case or this case, in general? And can you still follow the oath that you took at the beginning of the trial that you'll decide the case on the evidence you see and hear in the courtroom, along with the law that I give you in the case?" L.W. answered, "Yes, sir."

The trial court then discussed with the State and defense counsel what action to take. The record reflects that although the trial court thought L.W. was lying, the trial court was "not sure" article 36.29 was satisfied. Defense counsel asked for L.W. to be removed as disqualified[2] but refused to agree to proceed with eleven jurors, asking instead for a mistrial. The State's position was that because L.W. was not disabled, he could remain on the jury unless the defense agreed to his disqualification and proceeded with eleven jurors. The trial court ultimately denied the defense's motion to disqualify L.W., on the basis that article 36.29 had not been satisfied. The trial court also denied the defense's motion for a mistrial.

*Applicable Law*

The Texas Constitution requires a jury in a felony criminal trial to be composed of twelve members. TEX. CONST. art. V, § 13; *Rivera v. State*, 12 S.W.3d 572, 578 (Tex. App.—San Antonio 2000, no pet.). Likewise, article 36.29(a) of the Texas Code of Criminal Procedure provides that no less than twelve jurors can render and return a verdict in a felony case. Tex. Code Crim. Proc. art. 36.29(a). However, both the Tex-

**2.** The defense did not clearly argue that L.W. was disabled under article 36.29, although counsel at one point said, "He has been disabled." Instead, counsel argued that L.W. was "disqualified."

as Constitution and article 36.29 provide that if a juror dies or becomes "disabled" from sitting, the remaining empaneled jury has the power to render the verdict. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. art. 36.29(a) (providing that if a juror dies or becomes disabled from sitting after the trial of a felony case begins, but before the court's charge is read to the jury, "the remainder of the jury shall have the power to render the verdict"). Another exception is provided by section 62.201 of the Texas Government Code: "The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors." Tex. Gov't Code § 62.201. Thus a trial can proceed with eleven jurors when the parties consent, or, "regardless of the parties' consent, when a juror dies or becomes disabled under Art. 36.29(a)." *Hill v. State*, 90 S.W.3d 308, 314 (Tex. Crim. App. 2002) (citing *Hatch v. State*, 958 S.W.2d 813, 816 n.4 (Tex. Crim. App. 1997)).

Disability is not limited to physical disease, but includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror." *Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (quoting *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972)); *see also Ponce v. State*, 68 S.W.3d 718, 721 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The disabling condition may result from physical illness, mental condition, or emotional state. *Reyes*, 30 S.W.3d at 411; *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). A juror's bias or prejudice for or against the defendant does not render a juror disabled. *Reyes*, 30 S.W.3d at 412; *Bass v. State*, 622 S.W.2d 101, 106 (Tex. Crim. App. 1981).

The determination as to whether a juror is disabled is within the discretion of the trial court. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). Absent such an abuse of discretion, we will not find reversible error. *Id.* at 784. (citing *Brooks*, 990 S.W.2d at 286); *Ponce*, 68 S.W.3d at 721 (same). Thus, the trial court must make a sufficiently supported finding that the juror was disqualified or unable to perform the duties of a juror. *Scales*, 380 S.W.3d at 784. When reviewing the trial court's ruling on a request to dismiss a juror, we do not substitute our own judgment for that of the trial court, but rather assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable. *Id.* (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). We must uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *Id.* (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)).

*Analysis*

On appeal, appellant contends the trial court abused its discretion when it denied his motion to remove L.W. under article 36.29(a) because he lied after having taken his oath as a juror.[3] The trial court's statements on the record reflect his belief that L.W. lied about having seen news coverage of the case. Because the trial court is the finder of fact, we limit our review to a determination of whether a juror who falsely denies having seen news coverage about the case during trial becomes "disabled" within the meaning of article 36.29.

We first clarify that only a venireperson (a prospective juror) is disquali-

---

**3.** Article 35.02 require the court to administer the following oath to jurors: "You, and each of you, solemnly swear that you will make true answers to such questions as may be propounded to you by the court, or under its directions, touching your service and qualifications as a juror, so help you God." Tex. Code Crim. Proc. art. 35.02.

fied from sitting on a jury. This occurs in two instances: (1) the venireperson is "absolutely disqualified," or (2) the venireperson is subject to challenge for cause. *See Green v. State*, 764 S.W.2d 242, 246 (Tex. Crim. App. 1989). A venireperson is absolutely disqualified if he has been convicted of misdemeanor theft or a felony, is under indictment or other legal accusation for misdemeanor theft or a felony, or is insane. *See* Tex. Code Crim. Proc. arts. 35.19, 35.16(a). A juror, on the other hand, is dismissed from the jury after it is impaneled. This occurs only if the juror dies or becomes disabled from sitting. Tex. Code Crim. Proc. art. 36.29(a).

■ When a juror is guilty of misconduct, such as discussing the case with other jurors before deliberations, discussing the case with a non-juror, seeking information about the case on the internet, driving-by the crime scene, or watching/reading the news, the defendant is entitled to a new trial, if the misconduct prevented him from receiving a fair and impartial trial. Tex. R. App. P. 21.3(g). Because appellant does not assert the trial court erred in denying his motion for mistrial on the basis of jury misconduct, we do not decide that issue.[4] Rather, appellant seeks a holding from this court that a juror who allegedly lies to the court during trial is disabled, even though juror misconduct itself is not a matter of disability.[5]

As noted above, the issue before us is whether L.W. became disabled. L.W. clearly did not suffer from a physical illness. The fact that L.W. denied having seen the news could not qualify as a "mental condition" or "emotional state" unless it would inhibit him from fully and fairly performing the functions of a juror. *See Ponce*, 68 S.W.3d at 721; *see also Hill*, 90 S.W.3d at 315 (holding juror who was unable to perform her duties because of debilitating panic attacks was disabled); *Clark v. State*, 500 S.W.2d 107 (Tex. Crim. App. 1973) (holding juror was disabled where he was emotionally upset over the death of his father-in-law and needed to go out of the state to be with his wife and none of the parties objected to proceeding with the remaining jurors); *Griffin*, 486 S.W.2d at 951 (upholding discharge of juror as disabled because juror was arrested for driving under the influence of intoxicating liquors during a noon recess).

The arguments appellant makes in support of his claim that the trial court erred in failing to find L.W. was disabled are based upon (1) absolute disqualification in that L.W. committed aggravated perjury on the record, (2) L.W. was subject to a challenge for cause for lying to the trial court and (3) could not have been rehabilitated, and (4) the trial court agreed L.W. was disqualified. However, there is nothing in the record to indicate that, at the time of trial, L.W. was absolutely disqualified from serving as a juror under Tex. Crim. Proc. Code Ann. arts. 35.19, 35.16(a), discussed *infra*. "Committing a felony on the record" is not addressed in the code as an absolute disqualification. *See Brooks*, 990

---

**4.** We note, however, that the record does not reflect what information was contained in the news story. There is evidence that L.W. knew appellant's age but does not identify from what source he learned it. All the jurors who were aware L.W. had seen the news agreed that he gave no details.

**5.** We decline to expand the definition of disability to include juror misconduct. *See* Tex. R. App. P. 21.3(g) (providing a defendant is entitled to a new trial if a juror's misconduct prevented him from receiving a fair and impartial trial); *see also Thomas v. State*, 352 S.W.3d 95, 102 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding that to demonstrate he is entitled to a new trial based upon jury misconduct, a defendant must show that the misconduct occurred and resulted in harm to the defendant).

S.W.2d at 286 (concluding juror arrested for carrying a handgun to court was not disabled under article 36.29).

As to appellant's argument that L.W. was subject to a challenge for cause and could not have been rehabilitated for lying to the trial court, as noted above there is a distinction between a venireperson being disqualified and a juror being disabled from sitting. Article 36.29 is clear on its face. If the legislature had intended a trial court to remove a juror for any, or all, of the same reasons that a venireperson can be struck for cause, "it could have simply said so." *Hargrove v. State*, 40 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (construing a provision of the Texas Transportation Code). We decline to hold that a trial court errs in failing to remove a sitting juror because, as a venireperson, he or she would have been subject to a challenge for cause.

Finally, whether or not the trial court agreed that L.W. would have been subject to a challenge for cause is of no moment— it does not, nor can it, alter the plain meaning of article 36.29(a). The record before this court does not establish the trial court abused its discretion in failing to find L.W. was disabled pursuant to article 36.29. Accordingly, appellant's first issue is overruled.

■■■ Appellant's second issue asserts the failure to remove L.W. violated his right to a fair and impartial jury under the Texas Constitution. *See* Tex. Const. art. I, § 10. The record before this court reflects this issue was not presented to the trial court. *See* Tex. R. App. 33.1(a). State constitutional rights are subject to ordinary rules of waiver. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008). Accordingly, nothing is presented for our review and we overrule appellant's second issue.

IN-COURT IDENTIFICATION

■■■ In his final issue, appellant asserts the trial court erred in denying his motion to suppress an in-court identification by Saif of appellant and Perry. Appellant claims the pre-trial identification procedure was unduly suggestive, thus the in-court identification was tainted. In determining whether an in-court identification is admissible, we use a two-step analysis. *See Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). First, we determine whether the pre-trial identification procedures were impermissibly suggestive and, second, whether the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Id.*

The record reflects that after appellant's and Perry's fingerprints were found in Saif's vehicle, Sergeant Miller assembled a photographic array of six men, including Perry. Sergeant Chandler also assembled a photographic array of six men, this one including appellant. Saif selected Perry's photo from Miller's array and appellant's photo from Chandler's array. Saif subsequently identified appellant and Perry during a video deposition that was played before the jury as Saif's health did not permit his return for trial.

Appellant points to statements by Saif that Miller showed him a single picture of appellant prior to presenting him with the entire array as evidence that the identification procedure was unnecessarily suggestive. *See Bond v. State*, 29 S.W.3d 169, 171-72 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The trial court's written findings of fact and conclusions of law state as follows:

## I. FINDINGS OF FACT

. . .

17. Saif Al Mazrouei about 14 months after the capital murder on August 7, 2011, testified and the Court finds that

police officers stayed with him on the evening of August 7, 2011 to dawn on August 8, 2011.

18. Saif Al Mazrouei met again with officers the second night or second date with a set of photographs.

19. Mr. Al Mazrouei met with three or four officers, one of whom spoke Arabic.

20. The Arabic-speaking officer told Mr. Al Mazrouei that they "were about to show you a group of photos, if you're able to recognize any of the photos."

21. The officers showed him a group of photographs, he studied the photos and told the officers, "This is one of them, and this is one of them."

22. Mr. Al Mazrouei also testified a), one picture for each person, and b), also it was one group of people in one photograph, c), I don't recall.

24. The Court having seen and heard his testimony finds that a reasonable inference from Mr. Al [M]azrouei's testimony, considering the translation issues was that when he stated "one picture for each person," could literally mean one person was depicted in each photograph which is the case where there is a photo array with six pictures of six individual persons, or one picture for each of the six individual persons.

25. Also, the Court finds when he stated it was one group of people in one photograph could reasonably give rise to the inference that the "one photograph" was a sheet of photographs in a single "group" photo or photo spread comprised of a group of six individuals depicted on the typical photo spread presentation.

26. Then Mr. Al Mazrouei states "I don't recall."

27. The court finds from the credible testimony of Saif Al Mazrouei and Detective Mike Miller that he was shown group photos in photo spreads, not single individual photos one at a time and that he positively I.D.'d both suspects in each photo spread. He was never shown individual photographs before the photo spread. He was shown two sets of six photos in two separate photo spreads.

. . .

B. The Court finds further from the credible testimony of Detective Mike Miller and makes the following findings:

. . .

11. Two days after the capital murder, on August 9, 2011, H.P.P. Homicide Detective Mike Miller, developed two suspects Corey Perry and Detone Price due to having obtained descriptions and fingerprint results as to both suspects.

. . .

15. Detective Miller prepared a photo spread with Corey Perry in it.

16. Sergeant Ryan Chandler created a photo spread on Detone Price.

. . .

18. Detective Miller took Officer Zaroorat to translate and they went to Saif Al Mazrouei's apartment at 8181 El Mundo and met with Mr. Al Mazrouei, Noora Saif Benhamed and some other family members.

19. Detective Miller, Officer Zaroorat and Mr. Al Mazrouei then sat at a breakfast table away from the other family members.

20. Detective Miller did not bring individual photos of either Corey Perry nor Detone Price.

. . .

24. Detective Miller showed Corey Perry's photo spread and Mr. Al Mazrouei almost instantly identified him positively and when he showed Mr. Al Mazrouei Detone Price's photo spread, he took 30, 40, 52 seconds to positively identify him. Mr. Mazrouei had placed

his signature on each photo spreads to indicate his positive identifications.

. . .

28. At the motion for Suppression of the Identification of the Defendants' hearing held June 11, 2015, Detective Miller's testimony regarding the procedures used for producing the photo spreads and procedures used to conduct the photo spread presentations was credible and the Court finds that there was nothing suggestive in the photos selected or the photo spreads themselves, or the presentation procedures.

29. The Court finds that there is no credible evidence that Detective White showed Saif Al Mazrouei any photos in a one-by-one individual presentation. He showed Mr. Al Mazrouei two sets of photo spreads each containing six black males.

## II.  CONCLUSIONS OF LAW

1. Based upon the credible testimony of Saif Al Mazrouei and Detective Mike Miller, the Court finds that the procedures used by Detective Mike Miller and Sergeant Ryan Chandler in producing the photo spreads containing the photos of defendants Corey Perry and Detone Price and the procedures used by the officers and the manner in which the two photo spreads were conducted were done properly and in accordance with due process of law under the U.S. Constitution and with due course of law under the Texas Constitution.

2. The Court further finds, based upon the credible testimony that said procedures and manner used of producing and of conducting the two photo spreads were both done basically in the same manner. Each had six black males, with similar features, complexions, age, arid haircut and color of hair, each photo spread had a target suspect; each photo spread was not suggestive as to any individual in the photo spread; the position in the photo spread of the photo of each individual depicted in the photo spread was done in the photo lab and the photo lab technician put in specific criteria, and the computer chose fill-ins by means of a random placement by the Houston Police Department's Data-Links system. Neither photo spread was suggestive.

3. Detective Mike Miller admonished Saif Al Mazrouei, with the aid of the interpreter, Officer Zaroorat, before he viewed the two photo spreads . . . Detective Miller's manner of presenting the two photo spreads was not suggestive.

5. Here the Court finds that Detective Mike Miller did not show Saif Al Mazrouei individual photos in either of the two photo spreads. . . .

The trial court then denied appellant's motion to suppress the in-court identification by written order.

■■■■■■ When reviewing a trial court's ruling on a motion to suppress evidence, we give almost total deference to a trial court's determination of facts that are supported by the record, especially when those findings are based on an evaluation of credibility and demeanor. *Fienen v. State,* 390 S.W.3d 328, 335 (Tex. Crim. App. 2012). We review de novo questions of law and mixed questions of law and fact that do not turn on credibility and demeanor. *Id.*

Appellant does not challenge any of the trial court's findings of fact or conclusions of law. We have reviewed the record of the hearing conducted on appellant's motion to suppress as well as Saif's video deposition and conclude the record supports the trial court's determination that Saif was not shown a single picture of appellant before he was shown the six-picture photographic array containing ap-

pellant's photograph. *Compare Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (to the extent the trier of fact's determination of historical facts is based on a videotape admitted into evidence, the trier of fact is entitled to deference, but only if those factual determinations are supported by the record), and *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (declining to give that almost total deference to factfinder's determination of historical facts because "the videotape present[ed] indisputable visual evidence contradicting essential portions of [the officer's] testimony"); *see also Little v. State*, No. 14-13-00832-CR, 2014 WL 7172403, at *3 (Tex. App.— Houston [14th Dist.] Dec. 16, 2014, no pet.) (mem. op.) (not designated for publication); *State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.) (the reviewing court is to give almost total deference to the trier of fact's factual determinations unless the video recording indisputably contradicts those findings). Accordingly we conclude the pretrial identification procedure was not unduly suggestive. *See Carmouche*, 10 S.W.3d at 332. It is therefore unnecessary to conduct the second-step of our analysis—whether the pre-trial identification procedure gave rise to a very substantial likelihood of irreparable misidentification. *See Barley*, 906 S.W.2d at 33. We hold the trial court did not err in denying appellant's motion to suppress the in-court identification. Appellant's third issue is overruled.

## CONCLUSION

Having overruled appellant's issues, the judgment of the trial court is affirmed.

(J. Christopher concurring).

Tracy Christopher, Justice, concurring.

Lying Larry was instructed at the beginning of his jury service not to talk about the case with his fellow jurors. He was also told not to investigate anything about the case. But he watched a television news story about the case anyway.

The trial judge told Larry:

Don't investigate anything about this case. If you've been watching television for the past couple of days, you'll see that some judge in some other state held a juror in contempt because that juror got on the Internet and was doing some independent research about the law and independent research about the facts. And she was held in contempt of court, and the judge fined her $500 and put her in jail for 5 days. Now, I'm not saying I will do this. Don't misunderstand me, but I'm saying to you that this is very important. It's a very important part of the instructions that you must follow.

Larry was also told why this is important:

This goes along with what I said to you about listening to the evidence and deciding the case only on the evidence that you hear because that's the only way we can do it. It's the only way we can have a fair trial is for the evidence to be presented from sworn witnesses and you consider only that information from those witnesses, their testimony, and the evidence you hear in the courtroom.

He was told again why such an investigation would be unfair:

Obviously, you could see how it wouldn't be fair if one or two of you would get on the Internet and find out more about this case or anything about any kinds of cases of this nature. It's just not proper, not following the rules. And as I say, the rules are very important because I could hold a juror in contempt, and I could declare a mistrial

if you didn't follow the instructions. So, that would mean, we'd have to start this process all over again. You can see what a waste of time that would be for your time, other folks' time, and the expense it would cost the county to start another trial. That includes reading anything in any law books or looking up anything in any dictionaries.

Everything that you get that you will need to decide this case will come from the witnesses in evidence and will come from the law that I give you at the conclusion of the case because that's what we'll do.

Despite these instructions, Larry watched the news and told the other jurors that he had done so. He cryptically said that there was more to the case than what they had been told. When brought up to the bench to discuss this, Larry lied, and said he did not watch the news and he did not say anything to the other jurors about the news. The trial judge found him to be a liar.

Despite this finding, the judge would not excuse Larry and would not grant a mistrial.

Unfortunately, although the defense and the State initially agreed that Larry was disabled, the State incorrectly told the judge that the defense must also agree to continuing the case with eleven jurors. That is not the law. *See Hill v. State*, 90 S.W.3d 308, 314 (Tex. Crim. App. 2002). Once a juror is disabled, the trial may proceed with eleven over the objection of the defense. But defense counsel told the judge that he would not agree to go with eleven and then the State backed off its agreement that Larry was disabled.

Larry ended up being the jury foreperson, and the jury deliberated for a little more than two hours before finding appel-

lant guilty of capital murder. Thankfully, Larry never revealed any of the information that he saw on the news to the other jurors during deliberation.[1] Unfortunately, we do not have a video or a transcript of the news show. Therefore, we do not know what Larry actually saw on the show.

If Larry had told the truth, we would have known what he saw on television and the trial judge could have evaluated whether the news coverage did in fact make an impact on Larry. The judge would have asked Larry whether he could set that aside and base his verdict only on the evidence in court. But Larry lied. And although Larry repeated that he could be a fair juror, the trial judge did not really think much of Larry's answer: "He doesn't pay much attention to the oath." In fact the trial judge was "ticked" off because Larry lied.

But the trial judge ultimately concluded that Larry's lie did not disqualify him under article 36.29. And the judge refused to grant a mistrial even though the jury had heard only two days of evidence, with four more days of evidence to go in the trial.

I agree that we must uphold the trial judge's determination that Larry was not disabled under article 36.29. I disagree, however, with the majority's analysis.

The majority opinion takes a very narrow view of disability. In my opinion, the trial judge could have concluded that Larry was disabled, because his lying and withholding evidence from the court (the contents of the news coverage) is a condition that potentially "inhibits a juror from fully and fairly performing the functions of a juror." *See Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (quoting *Griffin v. State*, 486 S.W.2d 948 (Tex. Crim. App. 1972)). If the trial judge was con-

---

1. The jurors were questioned about this in a hearing on the motion for new trial.

vinced that Larry would continue to violate his oath, then Larry was surely disabled. However, under our standard of review, we must uphold the trial judge's determination unless it was an abuse of discretion.

For example, in *Reyes*, the Court of Criminal Appeals reversed our own court for not upholding a trial judge's determination that a juror who feared retaliation from the defendant was disabled. The *Reyes* Court also cited with approval three lower court cases that concluded (1) a juror was disabled because of her inability to find child care, *see Edwards v. State*, 981 S.W.2d 359, 366–67 (Tex. App.—Texarkana 1998, no pet.); (2) a juror was disabled due to deaths in the family, *see Allen v. State*, 867 S.W.2d 427, 429–30 (Tex. App.—Beaumont 1993, no pet.); and (3) a juror who was worried about losing money from his job and could not be attentive, *see Freeman v. State*, 838 S.W.2d 772 (Tex. App.—Corpus Christi 1992, pet. ref'd).

And while it is true that the *Reyes* Court also held that mere knowledge about the defendant (or even bias against a defendant) does not render a juror disabled, the Court did not foreclose a case where a trial judge could conclude that such knowledge would inhibit the juror from fully and fairly performing his functions as a juror. *See Reyes*, 30 S.W.3d at 412.

Appellant asks us to consider a line of cases where the Court of Criminal Appeals has held that a defendant is entitled to a new trial when a potential juror lies in voir dire about a material matter, is not struck, and actually serves on the jury. *See Sala-*

*zar v. State*, 562 S.W.2d 480 (Tex. Crim. App. [Panel Op.] 1978). Appellant argues that a potential juror who lies should be treated the same as a sitting juror who lies. Appellant made this argument to the trial judge. I do note that the remedy under these line of cases is usually a new trial—but if the lies were revealed during trial, is the only remedy a mistrial? *See Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004) (discussing the only remedy as a mistrial). Or could this be a disabled juror? The majority categorically rejects the application of this standard as a basis for disability. In my opinion, there is no need to categorically reject this standard in this case because the result would be the same.

In any event, appellant also asked for a mistrial. I would consider this a subsidiary issue in appellant's brief. Assuming without deciding that this standard would apply here, I would again concur because we have no evidence in the record about the materiality of the television news story. In addition, appellant acquiesced in the trial judge's decision not to confront Larry more directly with other jurors' testimony—to allow him to purge himself of his perjury. The judge concluded that this would make Larry more and more suspicious, more and more irritated, as well as more biased.[2] Appellant has failed to provide proof of the materiality of Larry's lie and was not entitled to a mistrial.

Our system of justice depends on judges, lawyers, jurors, and witnesses taking oaths and following them.[3] When a

---

**2.** In hindsight, the court should have told Larry that he was not going to get in trouble but that the court understood that Larry had discussed a news show with some of the other jurors. Larry probably lied because he was afraid that he would get in trouble. Unfortunately, as it is often noted, it's often the cover-up more than the original bad act that causes problems.

**3.** The State blithely told the judge that "if you are not a truth teller, that doesn't make you disabled." Then facetiously (I hope) said that "Lawyers are non-truth-tellers. I mean we are not disabled."

judge fails to follow his oath, he can be sanctioned and removed from office. Sometimes his misconduct disqualifies him from sitting on the case and his rulings are void. *See Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621 (Tex. 2012) (per curiam). Other misconduct, if probably prejudicial, can lead to a new trial. *See Erskine v. Baker*, 22 S.W.3d 537 (Tex. App.—El Paso 2000, pet. denied). When a prosecutor knowingly fails to correct a witness's perjured testimony, the defense is entitled to a new trial. *See Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957) (per curiam). When a prosecutor fails to disclose material evidence, the defense is entitled to a new trial. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In some cases prosecutor's bad conduct can even prevent a new prosecution after a mistrial. *See Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007) (double jeopardy prevents a new trial after mistrial caused by prosecution).

When a witness or juror fails to follow an oath and lies, our system is shaken. When a witness lies, new trials are granted if the lie was material. *See Ex parte Weinstein*, 421 S.W.3d 656 (Tex. Crim. App. 2014). When a potential juror lies about a material matter in voir dire, new trials are granted. *See Salazar*, 562 S.W.2d at 483. Surely a juror who lies about a material matter during trial should also shake our confidence and trust in the system, and should require removal of that juror, or a mistrial, or a new trial. *See Ford Motor Co. v. Castillo*, 444 S.W.3d 616 (Tex. 2014) (per curiam) (settlement agreement was found invalid because of the jury foreperson's lie about the state of deliberations).

Under the facts of this case, Larry's lie did not disable him nor did it warrant a mistrial. I respectfully concur in the court's judgment.