# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00013-CR
NO. 03-11-00016-CR

**The State of Texas, Appellant**

**v.**

**Daniel Joe Hernandez, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-09-301898 & D-1-DC-09-301900, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

---

**O P I N I O N**

This is an appeal from a trial court order granting appellee Daniel Joe Hernandez's motion for new trial based on juror bias arising from an in-court altercation between Hernandez and a witness. The jury found Hernandez guilty of murder and aggravated assault. *See* Tex. Penal Code Ann. §§ 19.02, 22.02 (West 2011). The court granted the motion for new trial after sentencing Hernandez to thirty-five years and fifteen years for the convictions, respectively. On appeal, the State argues that the trial court erred in granting the new trial because it incorrectly concluded that a sitting juror must be removed when the juror expresses bias against the defendant. Because we conclude that the trial court abused its discretion in granting the motion for new trial based on an incorrect legal standard, and the trial court's findings do not support any other valid grounds for granting a new trial, we reverse the trial court's order and remand this case for further proceedings.

**BACKGROUND**

On August 20, 2009, Francisco Iruegas, known as Pancho, was socializing with his friends, including George Lopez and Kristopher Rivera, underneath a streetlight outside of his mother's home. Around 2:00 a.m., a silver Honda drove up the street where the friends were congregating and came to a stop. Pancho approached the vehicle, mistakenly believing that it was another friend. The driver of the vehicle rolled down his window, fired three shots at Pancho, and then drove slightly forward and fired again. Pancho was shot three times, Lopez was shot once in the foot, and a bystander was also hit. After being transported to Brackenridge Hospital, Pancho died a few hours later. Rivera and Lopez identified Hernandez as the driver of the silver Honda, and officers with the Austin Police Department arrested Hernandez at his home. He was indicted for murder and aggravated assault on November 19, 2009. Trial began on September 14, 2010.

*The courtroom incident*

On the first day of trial, the State called Rivera as a witness.[1] After testifying, a deputy escorted Rivera from the stand. Passing by the defense table, Rivera managed to get free of the deputy's grip and attempted to jump over the defense table to attack Hernandez. Rivera managed to strike Hernandez in the face with a closed fist. Hernandez stood up and fought back immediately. After the deputy and others present were able to restrain Rivera, Ricky Zapata, a friend of Hernandez's who was observing from the audience, jumped over the courtroom divider and attempted to attack Rivera. Zapata was restrained before he was able to reach Rivera. The court

---

[1] The events surrounding this courtroom incident are described in the affidavits of several witnesses, which were admitted at the hearing on the motion for new trial.

2

ordered Hernandez to the center of the courtroom in order to distance him from Rivera, Zapata, and the now irate audience.

During this disturbance, but prior to its conclusion, the jury was removed from the courtroom. However, the jury witnessed Rivera's initial attack and Hernandez's reaction. Once Rivera and Zapata were removed and order was restored, the court brought the jury back to the courtroom and then recessed for the day.

***The court's initial conversation with Juror Taylor***

The following morning, Juror Jessica Mitchell gave the trial court a note which stated that she felt she could no longer be fair and impartial and that she was very afraid. The court called Juror Mitchell into chambers for a brief in-camera interview.[2] During the interview, the following exchange took place:

Court: I have to say that. You say in your note here that yesterday's events do two things. One, they put you in fear, and two, that you are not sure you can be fair. Does not being fair mean you don't think given those that you can base your decision just on the facts of the case?

Mitchell: Correct.

The court subsequently declared Juror Mitchell disabled and dismissed her from the jury without objection. *See* Tex. Code Crim. Proc. Ann. art. 36.29(a) (West 2011) (granting trial court authority to declare juror "disabled from sitting" and continue with fewer than twelve jurors).

---

[2] Counsel was not present at this or any subsequent interview with any juror. However, the interviews were transcribed by the court reporter as part of the trial transcript.

Following the interview of Juror Mitchell, the court brought in the remainder of the jurors and asked if any of them believed they "were unable to listen to the evidence and render a fair verdict." Jurors David Scoggins and Treg Taylor stated that they would like to discuss the matter further with the court; the remainder indicated they could continue with trial. The court first spoke with Juror Scoggins, who admitted that Hernandez's willingness to fight made him appear less innocent, but stated that he could put the incident out of his mind and remain fair and impartial.

The court then spoke with Juror Taylor. During this initial in-camera interview, Juror Taylor told the court that he was bothered by Hernandez's body language. He stated that "the way [he] make[s] judgment calls is looking at a person's body language." After some clarifying questions, the following exchange took place:

Court:         The reaction that you think you observed was such that it affected your opinion and position concerning the defendant?

Taylor:       Yes.

. . . .

Court:         And you believe that that could affect your ability to render a fair verdict?

Taylor:       Yeah. I would give it weight in my decision.

Court:         And you believe that at this point in time in any case no matter what you heard from here on out, that would be a factor?

Taylor:       That is what I don't know.

. . . .

Taylor:       Depending on what I heard though . . . it is possible that I could separate what I saw for the—be able to make a different decision than where I am at now. . . . If, as an example, the defense brings up

|  |  |
|---|---|
| | somebody who says hey, no, Daniel [Hernandez] was here, I have got proof. |
| Court: | What you are saying is your burden has shifted. |
| Taylor: | My burden has shifted. |
| . . . . | |
| Court: | Could you see yourself in a position of going into the jury room with that event out of your mind and rendering a verdict based on just the evidence you heard and the exhibits you have got? |
| Taylor: | Yes, that is possible. |
| . . . . | |
| Court: | Here is what your agreement to yourself and your oath has to be. If we do continue, I am going to ask you this again. I am not going to ask you necessarily which way or I don't want to influence anything about your decision except I want you maybe at the end of evidence to come in and be able to tell me truthfully whether or not that event still is of concern. |
| Taylor: | I can definitely do that. |
| . . . . | |
| Taylor: | Getting to the end of the trial and hearing the evidence, I can honestly tell you whether [Hernandez's] body language is going to influence my decision in any way whatsoever. |

Upon returning to the courtroom, the court informed counsel of his interviews with the jury and his decision to dismiss Juror Mitchell but retain Jurors Scoggins and Taylor.[3] Hernandez moved to dismiss Juror Taylor and moved for a mistrial. The court denied both motions

---

[3] Counsel did not have a copy or transcript of any of the in-camera interviews at that time.

5

and informed defense counsel that he could re-urge both motions after the conclusion of evidence.

Before allowing the State to proceed, the court gave the following instruction to the jury:

> We have discussed this in our in camera discussion, but the jury is instructed by the Court at this time that they cannot consider the events of late yesterday afternoon, the sort of interruption to our trial that occurred with a witness and then other individuals involved, cannot consider it as evidence in this case, cannot consider it for any purpose, it cannot affect your judgment in this case, it cannot affect your deliberations or be considered as evidence one way or the other for or against either side. You are to put that aside and not consider it for any purpose during the course of this trial. Thank you.

### *The court's second conversation with Juror Taylor and subsequent history*

Following the conclusion of evidence but before closing arguments, the court had a final in-camera interview with Juror Taylor. The following exchange occurred:

| | |
|---|---|
| Taylor: | Okay. Today at lunch I did a lot of thinking, and—about this question, and I honestly feel that being true to myself and being true to the Court that I can make a fair and impartial decision based on the evidence only. |
| Court: | . . . So you believe—and again, I am not putting words in your mouth, but I want the record to be unequivocally clear—you believe after further consideration and the passage of time, and not because of evidence you heard that is going to kind of subtract out or add to what you saw, but completely put that [courtroom disturbance] aside. |
| Taylor: | I can completely put that aside. |
| . . . . | |
| Court: | And there is no doubt in your mind? |
| Taylor: | No doubt in my mind. |

6

The court informed counsel of this final interview. Hernandez renewed both his motion to dismiss Juror Taylor and motion for a mistrial. The trial court denied both motions. Once again, the court orally and in its charge instructed the jurors to disregard the courtroom disturbance and base their deliberation solely on the evidence presented. Following closing arguments and deliberation, the jury of eleven unanimously found Hernandez guilty of murder and aggravated assault. Hernandez was sentenced by the court to thirty-five years for murder and fifteen years for aggravated assault.

Following sentencing, Hernandez filed a motion for new trial and motion to arrest judgment. In his motion for new trial, Hernandez argued that (1) the trial court improperly retained Juror Taylor after he displayed actual bias, and (2) that the courtroom disturbance biased the entire jury, both of which denied Hernandez his right to a fair and impartial jury. The court granted the motion for new trial and issued findings of fact and conclusions of law.[4] The court made these relevant findings: the courtroom disturbance did not taint the jury or produce inherent or implied prejudice or bias; Juror Taylor was "sincere, forthright and truthful" throughout the trial; "considering all of the comments made by juror Taylor," he was qualified to continue as a juror at the time of deliberation; but nonetheless, a new trial was granted "based solely on the legal conclusion" that the court was without discretion to retain Juror Taylor after his initial interview. This appeal followed.[5]

---

[4] Upon request from the State, the trial court issued supplemental findings of fact and conclusions of law that elaborate on those given in the order granting the motion for new trial. Both the original and supplemental findings of fact and conclusions of law are consistent with each other, and will be referred to collectively as the findings of fact and conclusions of law.

[5] *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(3), (c), (e) (West 2011) (permitting interlocutory appeal of order granting new trial and allowing stay of proceedings pending appeal).

## STANDARD OF REVIEW

We review a trial court's order granting a new trial for an abuse of discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). In applying that standard, we must not substitute our judgment for that of the trial court, but rather decide whether its decision was arbitrary or unreasonable. *Id.* However, "a trial judge does not have the authority to grant a new trial unless the first proceeding was not in accordance with the law." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2008). Thus, a trial court abuses its discretion when the court's decision is clearly wrong or the court acts in an arbitrary manner without reference to guiding rules or principles. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *State v. Bounhiza*, 294 S.W.3d 780, 783 (Tex. App.—Austin 2009, no pet.).

When, as in this case, the trial court makes express findings of fact, we defer to those findings of fact if they are supported by the record. *See* Tex. R. App. P. 21.8(b); *Cueva v. State*, 339 S.W.3d 839, 856 (Tex. App.—Corpus Christi 2011, pet. ref'd); *State v. Stewart*, 282 S.W.3d 729, 737 (Tex. App.—Austin 2009, no pet.). We review the trial court's conclusions of law de novo. *State v. Iduarte*, 268 S.W.3d 544, 548-49 (Tex. Crim. App. 2008).

## DISCUSSION

### *Did the trial court have discretion to retain Juror Taylor?*

The State's sole point of error is that the trial court abused its discretion by reaching an invalid conclusion of law as to the disqualification of a seated juror. According to the trial court's findings, the court granted the motion for new trial solely on the grounds that, "as a matter of law, Juror Taylor should have been declared disqualified and removed from the jury." The trial court,

8

analogizing from voir dire case law, reached the legal determination that "no discretion existed after [Juror] Taylor's initial comments describing his bias, and that he should have been removed."

Bias is an inclination toward one side of an issue that leads to a natural inference that the juror will not act with impartiality. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982). During voir dire, a venireperson may be challenged for cause when he displays "actual bias," i.e., bias for or against the defendant. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9) (West 2011); *Anderson*, 633 S.W.2d at 853. Actual bias constitutes bias as a matter of law such that the law deems it is not possible for a venireperson with actual bias to act impartially. *Anderson*, 633 S.W.2d at 853. A venireperson who is biased as a matter of law must be excused when challenged for cause, even if he states that he can set aside such bias and provide a fair trial. *Id.*[6]

However, once the jury is empaneled, actual bias is no longer grounds for automatic removal of a seated juror. *See Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997). For example, bias can constitute juror misconduct that prevents a defendant from receiving a fair trial. *Granados v. State*, 85 S.W.3d 217, 235-36 (Tex. Crim. App. 2002). However, the Court of Criminal Appeals has held that while voir dire case law is helpful in analyzing actual bias in the "juror misconduct" context, it is not controlling for several reasons. *See Quinn*, 958 S.W.2d at 402. First, article 35.16 of the Texas Code of Criminal Procedure, which is the statutory basis for automatic disqualification of venirepersons with actual bias, simply does not apply to empaneled jurors. *Id.* at 403; *see also In re J.G.C.G.*, 283 S.W.3d 927, 930-31 (Tex. App.—Fort Worth 2009, pet. denied)

---

[6] Similarly, if a venireperson's actual bias is not discovered during voir dire through no fault of the defense, the only effective remedy is a mistrial. *See Franklin v. State*, 138 S.W.3d 351, 351 (Tex. Crim. App. 2004).

("[I]t is apparent in context that the word [juror] in article 35.16 refers to *prospective* jurors and not to seated jurors."). In addition, the Court of Criminal Appeals recognized that jurors may naturally formulate opinions about the accused during trial on the basis of evidence presented. *Quinn*, 958 S.W.2d at 402-03 ("[I]t defies common sense and human nature to require that a juror have no impressions or opinions until the judge sends the jury to deliberations."). Therefore, we do not require that a juror have no opinions or impressions about the accused throughout trial; we require that a juror set aside that bias and remain fair and impartial as to the ultimate question, i.e., guilt or innocence. *See id.* at 402. The determination of whether a juror can set aside his bias and remain fair and impartial is left to the discretion of the trial court. *Granados*, 85 S.W.3d at 235-36.

Similarly, in the "disabled from sitting" context, a juror can be disabled for "any condition that inhibits [the] juror from fully and fairly performing the functions of a juror." *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1975) (citing Tex. Code Crim. Proc. Ann. art. 36.29). If the court finds that a juror is disabled, the court can remove the juror without the consent of either party and continue with fewer than twelve jurors. *Id.* In *Reyes v. State*, the Court of Criminal Appeals recognized that a juror's bias constitutes a disability within the meaning of Article 36.29 only if the effect of such bias "on a juror's mental condition or emotional state" inhibits the juror from "*fully and fairly* performing his functions as a juror." 30 S.W.3d 409, 412 (Tex. Crim. App. 2000) (emphasis added). The determination of whether bias rises to the level of disabling a juror is left to the discretion of the trial court. *Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003).

Ultimately, when a sitting juror expresses bias against the accused, the trial court must determine whether the juror can set aside that bias and remain fair and impartial. *See Granados*,

10

85 S.W.3d at 235-36; *Quinn*, 958 S.W.2d at 403; *see also Reyes*, 30 S.W.3d at 412. We review a trial court's decision on whether to retain a juror who expresses bias for an abuse of direction. *See Granados*, 85 S.W.3d at 235-36 (noting that upon court's inquiry into alleged bias, "trial court retains discretion in determining whether [] juror is biased"); *see also Fierro v. State*, 969 S.W.2d 51, 57 (Tex. App.—Austin 1998, no pet.) ("Because the trial court is in the best position to evaluate the demeanor of a [] juror, we review a trial court's determination of a challenge for cause only for clear abuse of discretion."). Therefore, the trial court's conclusion that it was without discretion as to whether to retain Juror Taylor after he expressed bias against Hernandez is incorrect. Given that the trial court based its decision to grant the motion for new trial solely on this legally invalid conclusion, we find that the trial court abused its discretion. *Herndon*, 215 S.W.3d at 907.

### *Other grounds for granting a motion for new trial*

In reviewing the grant of Hernandez's motion for new trial, we also determine whether the ruling was correct under any applicable legal theory, regardless of whether it is the legal theory articulated by the trial court. *Id.* at 905 n.4. This principle, known as the "right ruling, wrong reason" doctrine, requires us to review the record and determine whether a new trial should have been granted for any reason presented to the trial court. *See Helvering v. Gowran*, 302 U.S. 238, 245 (1937); *Arnott v. State*, 498 S.W.2d 166, 179 (Tex. Crim. App. 1973). Thus, looking through the prism of the trial court's findings, we review whether a motion for new trial could be granted because (1) the trial court abused its discretion by retaining Juror Taylor, (2) there is a reasonable probability the courtroom disturbance interfered with the jury's verdict, or (3) in the interest of justice.[7]

---

[7] No other potential grounds for granting a new trial were presented to the trial court nor are apparent from the record.

***Did the trial court abuse its discretion by retaining Juror Taylor?***

Having determined that a trial court has discretion to retain a seated juror who expresses bias toward a defendant, we now examine whether this trial court abused its discretion in retaining Juror Taylor. In reviewing the decision to retain Juror Taylor, we consider the totality of the circumstances, including his initial and final interview. *See Williams v. State*, 773 S.W.2d 525, 536-37 (Tex. Crim. App. 1988) (noting that appellate courts look beyond individual statements in isolation when reviewing determination of bias).

The trial court made the following findings of fact:

> The Court denied the request that juror Taylor be removed from the jury [after his first interview]. When making that ruling, the Court looked beyond any single comment made by juror Taylor during his *in camera* conversation with the Court that morning; the Court instead considered all of his statements as a whole. The Court also considered the demeanor of juror Taylor as a whole.
>
> Juror Taylor related to the Court in his first interviews that, based on the defendant's body language during the altercation, he had formed an opinion that the defendant was guilty and had shifted the burden somewhat to the defendant. He indicated a bias against the defendant, at that point, based on the incident. He also related with equal candor and apparent honesty that, depending on the evidence presented (by the defendant) and given some time, he *might be able to overcome this bias*.
>
> Separately and distinctly, he also agreed that with time he might be able to ignore the incident and his initial impressions, and *base his verdict solely on the evidence*. At this juncture, based on Taylor's responses and the Court's view of the alternatives . . ., the Court determined to continue with the trial with Taylor and question him again at the close of the evidence.

(Second and third emphasis added.) With regard to Juror Taylor's second interview, the trial court found that:

> [J]uror Taylor indicated that he could completely disregard the courtroom disturbance and comply with the Court's instruction to disregard that event. After considering

all of the comments made by juror Taylor, the court found that juror Taylor was qualified at that point to continue as a juror.

Based on the totality of the statements made by Juror Taylor, we find that the trial court's findings are supported by the record. In addition, the findings regarding Juror Taylor's first interview support the trial court's decision to wait until the close of evidence to determine whether Juror Taylor had set aside his bias. *See Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003) (where "record demonstrates [] vacillating or equivocal [juror], [] accord great deference" to trial court's determination of juror's ability to overcome bias). Therefore, the trial court did not abuse its discretion in retaining Juror Taylor.

Furthermore, the record and the findings support the trial court's conclusion that Juror Taylor was qualified to continue before deliberation. Given the court's findings of fact and conclusions of law, the trial court could not have granted a new trial on the theory that Juror Taylor should have been disqualified. Therefore, this is not a valid alternate ground for granting a new trial.

### *Is there a reasonable probability the disturbance interfered with the jury's verdict?*

Hernandez argues that the courtroom disturbance biased the jury as a whole. The courtroom disturbance in this case is analogous to cases dealing with bystander outbursts. *See, e.g.*, *Ashley v. State*, 362 S.W.2d 847, 850-51 (Tex. Crim. App. 1962) (finding that victim's mother's outcry during defense's closing argument did not necessitate mistrial). Under these cases, "conduct from bystanders which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict." *Landry v. State*, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985). The effect

13

of a witness's outburst as compared to a bystander's is merely one of degree, given that "the added visibility of a witness over a mere bystander will increase the impact of the outburst on the jury." *Stahl v. State*, 749 S.W.2d 826, 829 n.2 (Tex. Crim. App. 1988).

In this case, the trial court concluded that "[b]ased on the evidence before the Court, the Court's personal observations, and the relevant case law, the courtroom disturbance was not sufficient to taint the jury as a matter of law or to produce inherent or implied prejudice or bias." This conclusion is supported by the record, especially given the court's instruction and the jurors' unequivocal statements that they could set the disturbance aside. *See Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010) ("In the context of [bystander] outbursts, the trial judge's instructions to disregard are generally considered sufficient to cure the impropriety because it is presumed that the jury will follow those instructions."); *see also Young v. State*, 283 S.W.3d 854, 882 (Tex. Crim. App. 2009) (noting presumption that jurors follow court's instruction). Therefore, the trial court's findings of fact and conclusions of law do not support the proposition that there is a reasonable probability that the disturbance interfered with the jury's verdict. Thus, we conclude that this is not a valid alternate ground for granting a new trial.

### Should a new trial be granted in the interest of justice?

Hernandez finally contends that the trial court could have granted a new trial "in the interest of justice." A court has the discretion to grant a new trial in the interest of justice even when there is no single point of reversible error. *Herndon*, 215 S.W.3d at 907. However, "justice means in accordance with the law"; thus granting a new trial for a "non-legal or legally invalid reason is an abuse of discretion." *Id.* While Hernandez frames this as an "interest of justice" claim, his argument

14

is once again predicated on the theory that the courtroom disturbance and subsequent proceedings denied him his right to a fair and impartial jury. As we have stated, the trial court's determination that Juror Taylor was qualified to serve on the jury is supported by the record. Furthermore, the trial court's conclusion that the jury as a whole was not tainted is supported by the record. Given that these findings are supported by the record, we defer to the trial court. *Stewart*, 282 S.W.3d at 737. Because there is no other valid legal reason to grant a new trial in the interest of justice, we conclude that this is not a valid alternate ground for granting a new trial.

## CONCLUSION

We reverse the trial court's order granting the motion for new trial and remand for further proceedings consistent with this opinion.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Reversed and Remanded

Filed:   December 23, 2011

Publish

15